FOURNET, Chief Justice.
The Douglas Public Service Corporation instituted proceedings seeking injunctive relief against twenty-one named defendants[1] individually, and as officers, agents, and members of the Oil Workers International Union, Local No. 447, affiliated with the CIO, to prevent them from (1) trespassing on its private property, (2) interfering with persons lawfully entitled to enter or leave its premises, (3) pursuing any course, concerted or otherwise, involving the intimidation, molesting, threatening, or abuse of petitioner’s officers, agents, employees, customers, or employees of customers, or (4) damaging or injuring any properties belonging to petitioner, and, upon the dissolution of the temporary restraining order previously obtained and the dismissal of its suit on exceptions of no cause and no right of action, applied for and was granted writs to the end that we might review the ruling of the trial judge. Pending our determination of the matter, we granted an order staying all proceedings.
The allegations of the petition, the well-pleaded facts of which must be considered as true for the purpose of disposing of these exceptions, are that the petitioner, who owns and operates a bulk liquid storage terminal fronting on the Mississippi River in Jefferson Parish, as delineated on an at *977 tached map, has had the Oil Workers International Union as the representative of its employees for collective bargaining purposes, but because petitioner refused to accede to arbitrary, exorbitant and unreasonable demands of the union, its officers and members went on strike on February 23, 1954, despite every reasonable effort on petitioner’s part to avert such action by bargaining in good faith; and during the course of the strike the named defendants and others acting in concert with them engaged in the following specific unlawful and illegal activities: (1) Continuously from February 23, 1954, until the filing of the petition, they have trespassed upon the private property of petitioner; (2) certain specified defendants have on two occasions threatened with bodily harm two of petitioner’s managing employees — its superintendent and assistant superintendent, the former after his automobile was stopped as he attempted to leave the plant, and the latter if he continued to work for petitioner and keep its plant in operation; (3) other specified defendants have on three occasions threatened with bodily harm employees of petitioner’s customers — one as he attempted to enter the plant and the other two as’ they were engaged in work on tug boats of customers tied up at petitioner’s dock and wharf located on its private property on the batture. The dates, times, and incidents are given in full, including the names of all parties involved. In addition, other acts of violence that have been committed on petitioner’s premises by persons unknown are imputed to defendants. These acts, also detailed in the petition, consist of (1) interference with the operation of petitioner’s pumps by persons trespassing on its private property for the purpose of stealing (a) a valve stem from one pump, and (b) large fuses from a fuse block cabinet, which removals had the effect of stopping the motors furnishing power to the pumps, and (2) retaliation against and/or intimidation of customers who continued to do business with petitioner by the puncturing of the rear tires on a customer operated automobile.[2] It is alleged, further, that the damages already sustained by petitioner are irreparable, and unless such future activities are enjoined the petitioner will be forced to discontinue its business and will suffer further irreparable damages that cannot be estimated in a monetary amount.
In response to the rule the defendants, on *979 the return date, filed exceptions of no right of action, to the jurisdiction of the court rationae materiae, exceptions of no cause and no right of action and of prematurity, and, answering on the merits, denied generally each and every allegation of the petitioner.
' A perusal of the petition shows the exception of no right of action, predicated ón the contention that petitioner seeks to bring into court an unincorporate association by the citation of only a portion of its members, is without merit, for the union as such is not named as a party to the suit and has made no appearance of record. The suit was instituted against twenty-one named individuals, and it is prayed that these individuals be cited as officers, agents, and members of the union and that they and other agents, officers, and members of the riíiióh and all persons acting in concert with them be enjoined.
The exception to the court’s jurisdiction rationae materiae, based on the premise that this is a matter or dispute involving unfair labor practices in a business that. is. affected with interstate commerce, a field over which the National Labor Relations Board has exclusive jurisdiction under the Labor Management Relations Act, 61 Stat. 136 et seq., 29 U.S.C.A. §§ 141-197, is equally without merit under the facts of this case.
 There' is no question, of course, that Congressional legislation curtails state action in the field of interstate commerce intended to be covered, and that state action is, within that particular sphere, superseded. The overwhelming weight of judicial authority holds that the rights conferred by the Labor Management Relations Act of 1947 (referred to colloquially as the Taft-Hartley Act) are subject to exclusive enforcement through the administrative scheme as supplemented by judicial remedies prescribed in that statute. However, Congress, by the adoption of this act, has left a wide field still open to state regulation and control, and where the matter is one that is not granted exclusively to the National Labor Relations Board, the courts formerly possessing jurisdiction have retained it. In other words, state cession of jurisdiction takes place only where state and federal laws have- parallel provisions. Allen-Bradley Local, U.E.R.M.W. v. Wisconsin Employment Relations Board, 315 U. S. 740, 62 S.Ct. 820, 86 L.Ed. 1154; International Union, U.A.W. A.F. of L. Local 232 v. Wisconsin Employment Relations Board, 336 U.S. 245, 69 S.Ct. 516, 93 L.Ed. 651; Algoma Plywood & Veneer Co. v. Wisconsin Employment Relations Board, 336 U.S. 301, 69 S.Ct. 584, 93 L.Ed. 691; Hughes v. Superior Court of California, 339 U.S. 460, 70 S.Ct. 718, 94 L.Ed. 985; International Brotherhood v. Hanke, 339 U.S. 470, 70 S.Ct. 773, 94 L.Ed. 995; Garner v. Teamsters, C. & H. Union, 346 U.S. 485, 74 S.Ct. 161, 98 L.Ed. -. See, also, the excellent annotations at 32 A.L.R.2d 1026, 93 L.Ed. 470, and the discussion of this sub *981 ject in Newman’s very recent book entitled “The Law of Labor Relations,” beginning at page 76, and particularly pages 98-102.
As stated in the Allen-Bradley case [315 U.S. 740, 62 S.Ct. 826] “Congress designedly left open an area for state control,” and the intention “ ‘of Congress to exclude the states from exerting their police power must be clearly manifested.’ ” While the precise area in which the jurisdiction of the state courts to enjoin picketing is, or is not, affected by the federal acts is in considerable doubt, “the only one •which seems to be free of any substantial doubt is presented where a state court undertakes to enjoin picketing by illegal means, such as picketing accompanied by violence or threats, or mass picketing.” 32 A.L.R.2d 1029. (Emphasis supplied.)
The Supreme Court of the United States is, of course, the final arbiter as to whether and to what extent the Labor Management Relations Act of 1947 has affected the traditional jurisdiction of the state courts to enjoin picketing for an unlawful purpose and by illegal means. In the second Wisconsin case above cited, that court said [336 U.S. 245, 69 S.Ct. 521]: “While the Federal Board is empowered to forbid a strike, when and because its purpose is one that the Federal Act made illegal, it has been given no power to forbid one because its method is illegal — even of the illegality were to consist of actual or threatened violence to persons or destruction of property. Policing of such conduct is left wholly to the states.” (Emphasis supplied.)
In the very recent decision in the Garner case [346 U.S. 485, 74 S.Ct. 164], which is relied on by the defendants, the Supreme Court of the United States, while reversing state action enjoining picketing, was careful to point out that it was not’ “a case of mass picketing, threatening of employees, obstructing streets and highways, or picketing homes.” The opinion further points out: “We have held that the state still may exercise ‘its historic powers over such traditionally local matters as public safety and order and the use of streets and highways.’ ”
By way of exceptions of no cause and no right of action and of prematurity, however, the defendants, contend Louisiana; in conjunction with a* number of her sister, states, has adopted the “Little NorrisLaGuardia Act”, Act 203 of 1934, as now incorporated in the 1950 revisions under 23:841-23:849, which is patterned after the federal act of the same name, prohibiting the “issuance of sweeping injunctive relief by district courts in labor disputes,” the argument being, in effect, that we should follow the federal jurisprudence covering cases involving labor disputes under the federal act and thus prevent “government by injunction in labor disputes in any event, that we should not disturb the trial judge’s conclusion that the plaintiff’s petition is insufficient to constitute an allegation of violence and/or threats so *983 excessive as to render resort to the courts necessary for the preservation of peace and order.
LSA-R.S. 23:844 provides, briefly but substantially, that no court shall issue a temporary or permanent injunction in any case involving or growing out of a labor dispute unless and until the court has found as a fact, after hearing testimony in open court with full opportunity for cross-examination of witnesses, that those sought to be restrained have committed or threatened to commit unlawful acts that will cause the complainant substantial and irreparable injury to property; that these acts will continue unless restrained; and that complainant is without adequate remedy or ordinary legal procedure and has been unable to secure adequate official protection; provided at least 48 hours notice is given if the relief sought is a temporary restraining order, and provided further the relief sought is not specifically placed beyond the reach of any court action by the provisions of LSA-R.S. 23 :841.
In a recent well-considered opinion, the Court of Appeals for the Parish of Orleans pointed out that Congress, under the authority specifically granted it by the Constitution of the United States to create and regulate the jurisdiction and powers of all inferior federal courts, was well within its right to effectively prohibit these courts from issuing injunctions in labor disputes by the enactment of the Norris-LaGuardia Act, 29 U.S.C.A. § 101 et seq., while the power and jurisdiction of the . courts of this state flows from constitutional grants-[3] and the legislature is powerless to interfere with their prerogatives except as specifically authorized by the constitution, concluding that “The powers granted to the trial judge by the Constitution must take precedence over any provisions of any sort of legislation which runs counter thereto, whether such legislation pertains to capital, labor, or any other subject.” The decision in that case — Twiggs v. Journeymen Barbers, etc., La.App., 58 So.2d 298, 302— received the approval of this court when we refused the writs sought for its review with the comment that “The judgment is correct.”
Defense counsel recognize the validity of this distinction, for in brief they state the Twiggs decision “stands for the proposition that no act of the legislature, without constihttional amendment, may deprive the courts absolutely of their inherent right to issue needful writs,” but while subscribing thus to the holding they argue it is not pertinent or controlling here since that case was “not concerned with the basic policy laid down in the act interpreted *985 therein but only with defining the constitutional protection of the state court’s inherent rights to issue needful writs.” (Emphasis supplied.)
The right of a laborer to his hire and to organize for the promotion of better wages and working conditions is, in our opinion, as absolute and essential to the pursuit of happiness as is his right to freedom of speech, religion, and to life and liberty itself, — all recognized under our basic law as being among those inalienable rights with which all men are endowed by their Creator. And in order to insure that these rights will be maintained inviolate and fully protected, the courts were created with the unqualified guarantee that “No person shall be deprived of * * * property, except by due process of law”, Section 2 of Article I, and that “All courts shall be open, and every person for injury done him in his rights, lands, goods, person or reputation shall have adequate remedy by due process of law and justice administered without denial, partiality or unreasonable delay.” Section 6 of Article I.
For the courts to function in an ■orderly manner, and with equal protection to all, the Constitution not having provided otherwise, it became necessary for the legislature to establish the rules and regulations that would govern the procedure to be followed by those seeking this guaranteed protection, including the issuance of all needful writs and processes. Such procedural statutes will be upheld in our courts so long as they do not violate our basic law. However, any act of the legislature, whether procedural or substantive, that infringes or trenches upon the constitutional prerogatives of the courts, cannot stand.
With these fundamental principles so well known, and universally recognized under our republican form of government as absolutely essential for the maintenance of our way of life, it is difficult for us to understand how our learned brother below could find complainant’s petition failed to allege an injury done it in its private and property rights and, by the dismissal of its suit, to, in effect, close the doors of his court to it in its effort to have these rights protected.
The petition clearly states that the twenty-one named defendants are trespassing upon the private property of the petitioner and are committing numerous acts of violence, coercion, and intimidation with respect to its property rights and with respect to the rights of its employees and those of the employees of its customers, which acts continued even up until the day of the trial of the case, when a supplemental petition was sought to be filed showing additional acts of violence that had just that day occurred, including the cutting of the petitioner’s lines of communication.
While, as we have just pointed out, vye fully recognize that the laborer in his ef+ *987 fort to secure better working conditions and wages is well within his right to organize, to bargain, and to take any and all needful steps to lawfully accomplish this end, including picketing, by the same constitutional guarantees that make these rights secure for the laborer, the employer is also insured he will not be deprived of his property except by due process of law and that the courts shall be open to him for the protection of his rights.
If the plaintiff can prove the allegations of its petition (which are admitted by defendants to be true for the purpose of disposing of these exceptions) its property rights are clearly being violated by the trespasses being committed upon its property, by the destruction of its property rights, and by the violence, coercion, and intimidation of its employees through threats of physical and bodily harm and by the interference with their peaceful entrance and exit from its plant, as well as by the illegal and unlawful interference with the employees of its customers and those choosing to continue doing business with it. Unquestionably, therefore, under its constitutional right to .due process of law and to justice administered without denial, impartiality, and unreasonable delay, it is entitled to the relief sought.
It follows that the provisions of the so-called anti-injunction act that seek to limit the -jurisdiction of the district courts of this state in the granting of immediate relief, if that is necessary for the protection of rights and property, are illegal and ineffective.
While it is true that it is within the sound discretion of the trial judge to issue a temporary restraining order in any given case of this type, we think under the alleged facts of this case he exercised his discretion wisely in granting the temporary restraining order to prevent irreparable damage, but, having granted this order, it then became his duty to hear the trial of the case on the merits in accordance with law and without unreasonable delay.
Counsel’s argument that defendants have-not been guilty of trespassing upon petitioner’s private property since the levees are public is a matter that addresses itself toi the merits of the case, as there is no allegation in the petition asserting the activities, of trespass complained .of are confined to the levee.
For the reasons assigned, the writs are made absolute, the judgment of the lower court maintaining defendants’ exceptions of no cause and no right of action and dismissing plaintiff’s suit is reversed, the exceptions are overruled, and the case is remanded to the lower court for trial on the merits, on the rule for the preliminary injunction,, pending which the temporary restraining-order heretofore issued by the trial judge on April 9, 1954, is to remain in full force and effect. Costs of this appeal are to be *989 borne by the defendant-appellees; all other costs are to await the final disposition of the case.

. L. Jambón, E: Rodriguez, A. Gauthreaux, E. Pairque,- C. Inbody, O. Gaspard, S. Chaisson, C. R,omerq, A. Ford, J. Zoplii, P. Turpiano, S. Badeaux, E. Griffin, M. Gaspard, L. Tassin, M. Sauerwin, O. Caston, J. Causin, W; Gauthreaux, R. Perez, and M. Kern.

. On the day set for the trial of the rule nisi for the preliminary injunction, the trial judge refused to permit the petitioner to file a supplemental and amended petition alleging additional acts of violence, coercion, and intimidation that had occurred just this morning — including mass picketing, the physical blocking of the entrances to petitioner’s plant, and-the cutting of its telephone eommunicasystem — despite the fact the temporary restraining order was then in full force and effect, on the ground that the matter had been submitted on exceptions and he felt petitioner had ample legal remedy.

. Under the constitution of 1921 the district courts are vested with original jurisdiction in all civil matters, Section 35 of Article VII, and may “issue writs •of mandamus, certiorari, prohibition, quo warranto, and all other needful writs, orders and process” in aid of their jurisdiction. Section 2 of Article VII.