131 So.2d 248 (1961)
James C. TOOMER, Jr., and Ronald J. Toomer, d/b/a Toomer Electrical Co.
v.
LOCAL NO. 995, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, an Affiliate of A. F. of L.
No. 5350.
Court of Appeal of Louisiana, First Circuit.
May 22, 1961.
Rehearing Denied June 30, 1961.
*249 Dodd, Hirsch, Barker, Avant & Wall, Baton Rouge, for appellant.
Barnes & Jones, Baton Rouge, for appellee.
Before ELLIS, LOTTINGER, JONES, HERGET and LANDRY, JJ.
JONES, Judge.
This is an appeal growing out of labor difficulties between the plaintiff, a partnership engaged in electrical construction work, and the defendants, the Baton Rouge Local 995 of the International Brotherhood of Electrical Workers, AFL-CIO, and its individual officers, Emile J. Bourg, Jr., President, A. E. Hogan, Secretary-Treasurer, and John A. Chaney, Financial Secretary. Plaintiff had an electrical subcontract with one A. D. Kendrick to do the electrical work on the construction of the new Scott Street Elementary School in the City of Baton Rouge, Louisiana. On June 22, 1960, when plaintiff's employees, all of whom are members of the United Mine Workers of America, District 50, Local No. 14365, reported for work at the Scott Street Elementary School, there was a picket line around the site of the construction. The pickets carried signs reading "Toomer Electric does not employ members of Local Union 995 I.B.E.W."
The effect of this picket line was to completely shut down the construction at the Scott Street Elementary School. Plaintiff filed a petition in the District Court alleging that the defendant union was attempting "to force the employees of the plaintiffs herein to join its membership * * *" and further alleged that the presence of the picket line was causing irreparable injury to petitioner and that the defendants were guilty of certain acts of violence, and prayed that a temporary restraining order issue. The District Court granted the temporary restraining order on June 24, 1960, temporarily restraining defendants from, among other things, picketing the Scott Street Elementary School site and pursuing any course, concerted or otherwise, involving the intimidation, molestation, threatening or abusing petitioner's employees, customers or employees of customers or persons doing business with the petitioner, or damaging or injuring any property belonging to or leased by petitioner. Defendants filed a motion to dissolve the temporary restraining order together with an order to show cause. These were made returnable on the same day as the rule nisi.
At the time of the hearing on the rule nisi and the rule to show cause, defendants filed exceptions as to the validity of service of process on its officers, prematurity and no cause and no right of action. Defendants further asserted that the jurisdiction of the District Court was preempted by the National Labor Relations Board and that the peaceful activity of the defendants was protected by the National Labor Relations Act and the Constitution of Louisiana and of the United States. Defendants also filed a return to the ruling admitting peaceful picketing by the Local Union defendant, with two signs at the school job site reading, "Toomer Electric *250 Company does not employ members of Local Union 995 I.B.E.W."
By agreement, all of the above matters were taken up together by the court on July 5th. The court referred the motion to dissolve to the merits, sustained the exception of no cause of action as to the Local Union, overruled the exception of no cause of action as to the three officers, Bourg, Hogan and Chaney, made the rule absolute as to them and granted a preliminary injunction prohibiting the re-establishment of any picket line or trespassing on any property under control of the plaintiff, and from pursuing any course, concerted or otherwise, of intimidation, molesting or threatening members of plaintiff's firm. The individual defendants filed a motion for a new trial, or, in the alternative, for a rehearing, which was overruled after argument, and the preliminary injunction issued.
Defendants appealed to this court specifying the following errors:
"The Court was in error in granting the preliminary injunction against the individual officers in refusing to dissolve the Restraining Order and failing to maintain the Exceptions to the jurisdiction ratione materiae, no cause and no right of action; and in refusing to dismiss the petition."
We will address ourselves first to the question of the jurisdiction, vel non, of the trial court and whether in fact this area has been pre-empted by the National Labor Relations Act, as amended, 29 U.S. C.A. §151 et seq. Counsel for plaintiff-appellee admits in his brief that if Toomer Electric Company is in fact engaged in interstate commerce, there would be some validity to the position that the trial court is without jurisdiction. It is his position that the testimony in the record clearly establishes that all work done by the Toomer Electric Company has been and is being done in the State of Louisiana. With this point we agree. The National Labor Relations Act, however, is not restricted in its scope and application to employers actually engaged in interstate commerce. It is well established that any employer whose business operations "affect commerce" by reason of the fact that the goods they sell, use or purchase, move or have moved across state lines either as a separate unit or a component part of a finished product come within the scope of the National Labor Relations Act. Guss v. Utah Labor Relations Board, 353 U.S. 1, 77 S.Ct. 598, 1 L.Ed.2d 601. The National Labor Relations Board, in its discretion, may, by rule of decision or by published rules adopted pursuant to the Administrative Procedure Act, decline to assert jurisdiction over any labor dispute involving any class or category of employers, where, in the opinion of the Board, the effect of such labor dispute on commerce is not sufficiently substantial to warrant the exercise of its jurisdiction: provided, that the Board shall not decline to assert jurisdiction over any labor dispute over which it would assert jurisdiction under the standards prevailing upon August 1, 1959. 29 U.S.C.A. §164(c) (1). As an outgrowth of its discretionary authority to accept or reject cases, the Board has adopted standards"jurisdictional yardsticks"to guide it in the exercise of its jurisdiction. In non-retail businesses, jurisdiction will be asserted by the Board if the yearly outflow or inflow, direct or indirect, is $50,000. Indirect inflow is defined as "the purchase of goods or services which originated outside the employer's state, but which he purchased from a seller within the state." Simmons Mailing Service, 1958, 122 N.L.R.B. No. 13. As to General Contractors, the Board looks either to the total volume of the contractor's business or the general construction he undertakes to discharge. Carpenters Local 1028, 1955, 111 N.L.R.B. 1025.
In the instant case, Mr. Ronald Toomer testified that his total volume of business during the preceding year was approximately $100,000. He further testified *251 that he purchased approximately $60,000 worth of materials. Mr. W. L. Holts, an International Representative of the International Brotherhood of Electrical Workers, testified that he had been an electrician since 1915, and that his responsibility as International Representative included organizing and being familiar with all electrical work done in the State of Louisiana. He positively testified that there are no manufacturers in the State of Louisiana making wire, conduit, fixtures, electrical boxes or any other material that is ordinarily used in electrical installations by contractors. These are the same type materials which Mr. Toomer testified were used by him in the amount of $60,000 during the last year. Certainly, under the application of either of the above tests, the operation of plaintiff's business would be found by the National Labor Relations Board to affect interstate commerce and under the provisions of Section 164(c) (1) would be required to assert jurisdiction, assuming that a labor dispute existed or that the conduct complained of was protected, regulated or prohibited by the National Labor Relations Act. Under the provisions of the National Labor Relations Act, a "labor dispute" includes any controversy concerning terms, tenure or conditions of employment, or concerning the association or representation of persons and negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether the disputants stand in the proximate relation of employer and employee. 29 U.S.C.A. § 152(2). Additionally, under Section 158 of Title 29 of the U.S.C.A., which is Section 8(b) (4) of the National Labor Relations Act, it shall be an unfair labor practice for a labor organization or its agent (4) "to engage in, or to induce or encourage the employees of any employer to engage in, a strike or a concerted refusal in the course of their employment to use, manufacture, process, transport or otherwise handle or work on any goods, articles, materials, or commodities, or perform any services, where an object thereof is: * * * (b) forcing or requiring any other employer to recognize or bargain with a labor organization as the representative of his employees unless such labor organization has been certified as the representative of such employees * * *". Clearly the conduct complained of in the instant case is regulated by the National Labor Relations Act and constitutes labor dispute within the definition of the act. See also Sections 8 (a) (2) and 8(f) of the Act, 29 U.S.C.A. § 158 et seq.
Having determined that this matter involves a labor dispute over which the National Labor Relations Board has jurisdiction, we must now determine whether this fact divested our State District Court of its jurisdiction. Counsel for defendants specifically objected to the jurisdiction of the trial court and urged that the matter had been pre-empted by the federal law. The decisions of the United States Supreme Court dealing with the power of the state court to enjoin picketing, as affected by provisions of the National Labor Relations Act, have consistently followed the principles set forth in the celebrated case of Garner v. Teamsters, Chauffeurs and Helpers Local Union No. 776 (AFL), 346 U.S. 485, 74 S.Ct. 161, 98 L.Ed. 228, that a state court is without jurisdiction to enjoin picketing which, when peaceful, comprised an unfair labor practice under the federal act because the jurisdiction of the National Labor Relations Board was regarded as being exclusive. This so-called doctrine of "pre-emption" in all labor disputes of whatever nature between persons engaged in business affecting interstate commerce has been uniformly applied since that time. Guss v. Utah Labor Relations Board, supra; Amalgamated Meat Cutters and Butcher Workmen of North America, Local No. 427, A. F. L. v. Fairlawn Meats, Inc., 353 U.S. 20, 77 S.Ct. 604, 1 L.Ed.2d 613; San Diego Bldg. Trades Council v. Garmon, 353 U.S. 26, 77 S.Ct. 607, 1 L.Ed 2d 218; Weber v. Anheuser-Busch, Inc., 348 U.S. 468, 75 S.Ct. 480, 99 L.Ed. 546; *252 General Drivers, Warehousemen, and Helpers, Local Union No. 89 v. American Tobacco Co., 348 U.S. 978, 75 S.Ct. 569, 99 L.Ed. 762; United Mine Workers of America v. Arkansas Oak Flooring Co., 351 U.S. 62, 76 S.Ct. 559, 100 L.Ed. 941; Mississippi Valley Electric Co. v. General Truck Drivers, etc., 229 La. 37, 85 So.2d 22.
We think it clear that the effect of the National Labor Relations Act is to bar the states from enjoining peaceful picketing which affects interstate commerce, absence violence or threats of violence. Clearly, where there are acts constituting breach of the peace, threats of violence or violence the state courts under their police power have the right to enjoin such wrongful conduct. Douglas Public Service Corporation v. Gaspard, 225 La. 972, 74 So.2d 182; Godchaux Sugars v. Chaisson, 227 La. 146, 78 So.2d 673.
According to the verified allegations of the petition, numerous acts of violence, threats and intimidation were committed by defendants. The trial judge must accept all well plead allegations of the petition as true when considering the issuance of a temporary restraining order. Thus, it was proper for the restraining order to have issued. At the hearing on July 5th, when, by agreement of counsel, all matters, the exceptions, the various rules and the objection to the jurisdiction of the court, were taken up by the court, considerable testimony was presented by the plaintiff to establish the threats of violence and acts of violence which had been alleged. After a careful and detailed analysis of the record, we do not feel that the plaintiff has discharged the necessary burden of proof and established any threats of violence or acts of violence.
Petitioner Ronald Toomer testified that he was threatened by members of the defendant Union that he had better not cross the picket line. Yet, he further testified that he crossed the picket line and nothing happened as a result thereof. Additionally, the only testimony in the record as to a threat was one of the pickets told Ronald Toomer he had better not cross the picket line. He crossed the line, remained on the job for an hour or so and nothing happened. Mr. James C. Toomer, Jr., testified that he was permitted to cross the picket line and stay on the job for most of the day in order to look after his equipment. He said that his way was not blocked nor was there any violence. There is even testimony in the record to the effect that he had coffee with the business agent of the Union in front of the construction site. He further testified that he had been followed home on occasions. Mr. James Toomer, however, could not identify anyone who supposedly followed him and positively testified that he was never stopped, threatened or in anyway contacted by the person who "followed him". He did not report any of this to the police. He would not say that the people who "followed him" were members of defendant Union.
There were also allegations in plaintiff's petition to the effect that there had been damage to their job on the Employment Security Building and that there had been an explosion at their shop, all of which was caused by defendant Union. At the hearing it was brought out that the damage to the Employment Security Building had occurred one or two months prior to the present difficulty between plaintiff and defendants. Some of the damage that was committed was done to work of plaintiff and some of it was to existing facilities in the building which had no connection with plaintiff's work. There is not one shred of evidence to connect this damage with the defendants. In fact, when specifically asked, neither of the Toomer brothers would even accuse the defendants as being responsible for the damage. The explosion which was complained of occurred in a warehouse belonging to a contractor by the name of Comeaux. The record is clear that the damage that was caused by this explosion was in the part of the building *253 occupied by Comeaux. Toomer Brothers rented a part of the warehouse for their shop. This was the portion nearest the road and clearly identified as Toomer's Shop. Yet the damage was done to the part of the building identified as Comeaux's. Again, neither of the Toomers in their testimony would even accuse the defendants of having caused this damage. In light of all the testimony, we find the record completely devoid of any evidence of threats of violence or of violence directed toward Toomer Brothers by either the defendant Union or its individual officers.
Accordingly, since there is no violence or breach of the peace, we have no alternative but to find that jurisdiction in this matter has been pre-empted by the National Labor Relations Board. Having so found, we believe it unnecessary to discuss the other points raised by counsel for appellant in his assignment of errors.
It is therefore ordered, adjudged and decreed that the judgment of the trial court be reversed and that plaintiff's suit be dismissed at its cost.
Reversed.