HERGET, Judge.
These two cases having identical law and factual issues were consolidated for trial in the lower Court. Plaintiffs, Barksdale and LeBlanc (a partnership engaged in construction work) and Electric Shop, Leon Naquin and Son (an electrical subcontractor) instituted injunctive proceedings to restrain defendant, Local No. 130, International Brotherhood of Electrical Workers, from picketing the W. S. Lafargue Elementary School project in Thibodaux, Louisiana. The Lafourche Parish School Board entered into a general contract with Barks-dale and LeBlanc for the construction of the school and said general contractor subcontracted the electrical work thereon to Electric Shop, Leon Naquin and Son.
For several weeks the work had been in progress when, on March 31, 1960, Defendant dispatched a letter to Naquin, the subcontractor, wherein the Union advised Naquin that the wages paid and other benefits given by Naquin to its employees were less than that required by the Union to be paid to Union employees performing the same type of work and that the Union could not maintain its present Union standards or improve them as long as there were employees in the industry who were re-' ceiving less than the Union employees; that unless Naquin was willing to meet such Union standards in the treatment of its employees such fact would be publicized by the Union as permitted by law. In the letter Naquin was further advised that the Union did not desire that Naquin coerce or interfere with its employees in their right to join the Union or not, said employees having *772 previously refused to join the Union; and, furthermore, Naquin was advised that the Union was not requesting that Naquin enter into a collective bargaining agreement with it. The letter further advised Naquin that upon failure to hear from it within the next five days it would be assumed by the Union that Naquin had decided not to meet the Union standards. Naquin did not reply to this letter of the Union and on April 6, 1960 the Union placed two pickets on the construction job site carrying picket signs reading: “Employees of Leon Naquin & Son Electric Shop do not receive Union wages and benefits” and “Substandard wages and benefits destroy our higher Union standards”. Both of these notices were signed by Local No. 130, International Brotherhood of Electrical Workers, AFL-CIO. Immediately after pickets appeared on the job they distributed pamphlets to the public and to the employees working on the job in which it was asserted there was a dispute between the Union and Leon Naquin and Son Electric Shop on the W. S. La-fargue Elementary School, Thibodaux, Louisiana job; that the employees of Naquin had exercised their right and had indicated no interest in affiliating with the Union or any other labor organization; that, however, the wages and conditions of employment received by the employees of Naquin were below those which had been established by the Union for the performance of similar work; that the Union could not improve or sustain the standards obtained by it as long as there were employees in the industry receiving less; that it was a decision to be made by the individual as to whether or not support would be accorded to the Union by refraining from patronizing Naquin during the dispute, but hope was expressed that such support would be given.
Immediately following the placing of pickets on the job site, all the employees of Barksdale and LeBlanc and all other subcontractors, except Naquin, refused to report for work and refused to work as long as pickets were on the job site. Picketing continued until April 11, 1960 when the Court below, on the petitions of appellees, issued a temporary restraining order enjoining the Union from further picketing. The Defendant filed a number of exceptions which were overruled and filed a motion to dissolve. Following a hearing, the Trial Court rendered judgment on April 21, 1960 which was read and signed in open court April 22, 1960 refusing the motion to dissolve the temporary restraining order issued on April 14, 1960 and making absolute the rule for a preliminary injunction and “accordingly that a preliminary injunction issue herein as prayed for upon plaintiff furnishing bond according to law in the sum of one thousand and no/100 ($1000.00) Dollars.”
From these judgments the Union appealed to the Supreme Court of Louisiana and the cases were transferred by that Court to this Court under the recent constitutional changes giving jurisdiction of such appeals to this Court.
Appellant contends the State Court was without jurisdiction over the subject matter in controversy and alternatively maintains that picketing in the manner in which same was done in the instant case was lawful and not violative of any law or policy of the State. Appellees maintain that there is no “labor dispute” as such which would place jurisdiction in the National Labor Relations Board as contended by appellant, therefore the State Court and not the N.L. R.B. had jurisdiction over the matter and appellees maintain that the picketing, while admittedly peaceful, caused them irreparable damage and thus was illegal and properly restrained.
As observed by Mr. Justice Jackson in the case of Garner v. Teamsters, Chauffeurs and Helpers, etc., 346 U.S. 485, 74 S.Ct. 161, 98 L.Ed. 228:
“The national Labor Management Relations Act, as we have before pointed out, leaves much to the states, though Congress has refrained from telling us how much. We must spell out from *773 conflicting indications of congressional will the area in which state action is still permissible.”
From a reading of the National Labor Relations Act it is difficult to determine the exclusivity of jurisdiction granted to the Board in controversies involving labor and management in a business affected with interstate commerce. There seems, however, to be no question under the provisions of 29 U.S.C.A. § 141 et seq. that with certain exceptions the N.L.R.B. is vested with exclusive jurisdiction to determine unfair labor practices where there exists a bona fide labor dispute. Paragraph (c), 29 U.S. C.A. § 113 provides:
“The term ‘labor dispute’ includes any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether or not the disputants stand in the proximate relation of employer and employee.”
Under Section 160 of the Act the Board is vested with jurisdiction to prevent any person engaging in any labor practice during or as a result of a labor dispute.
As an exception to the exclusivity of jurisdiction conferred upon N.L.R.B. by Congress, the United States Supreme Court in the recent case of Charles Dowd Box Co. v. Courtney, 368 U.S. S02, 82 S.Ct. 519, 7 L.Ed.2d 483 (1962) held that controversies concerning violations of contracts between an employer and a labor organization representing employees in an industry affecting interstate commerce as defined in Section 301(a) of the act are not within the exclusive jurisdiction of the federal courts and to the contrary Congress expressly intended that the federal district courts be given jurisdiction over suits for violation of certain specified types of contracts without any suggestion that said jurisdiction should be exclusive but the language used was permissive only and in no way encroached upon the existing jurisdiction of state courts.
In Douglas Public Service Corporation v. Gaspard, 225 La. 972, 74 So.2d 182, the Supreme Court of this State as did the Supreme Court of the United States in the case of Garner v. Teamsters, Chauffeurs and Helpers, etc., supra, recognized an exception to the exclusivity of the jurisdiction of the N.L.R.B. where as a result of a labor dispute actual or threatened violence or destruction of property occurs, on the basis that such conduct impinges upon the police power, and jurisdiction of the state courts in such instances is maintained.
In the cases we have before us there is no contractual relation between the parties Plaintiffs and Defendant and admittedly there was no violence in fact resorted to by the Union; nor none threatened; nor was there any disturbances of the peace and safety. Picketing therefore being peaceful was not in contravention to the police power of the State.
In the case of Derouen v. Lard, La.App., 121 So.2d 311, this Court held that the state court was without jurisdiction to entertain a suit by an electrical contractor alleging that certain picketing conducted by defendant Union as result of a labor dispute constituted an unlawful restraint of plaintiff’s trade and business, observing that under the N.L.R. Act the right was afforded to plaintiff to file such a charge before that Board and in the event the Board dismissed the charge because the Board refused to accept jurisdiction over the matter then and only in that event the state court would have jurisdiction.
Appellees maintain that the N.L.R.B. has no jurisdiction of their complaints because same do not involve a “labor dispute” as defined in the act and they maintain there is no labor dispute between either of appellees and the Union. It is appellees’ contention that Naquin makes no secret of the wages paid to its employees nor the working conditions, therefore the Union’s publication of *774 such fact involves nothing that is not admittedly publicly known. From the action of the Union, however, it is apparent to us that the purpose of the picketing was to compel Naquin to raise the wages and standards of its employees to those comparable to the.Union scale. The Union, we do not believe, resorted to the action of picketing this job site for its nuisance value only, but hoped to thereby impress upon the employees of Naquin and the public the advantage of being a member of the Union. The Court would have to close its eyes to the Union’s obvious purpose in this action in picketing the job site to say that there was no “controversy concerning terms or conditions of employment * * * regardless of whether or not the disputants stand in the proximate relation of employer and employee.” Factually the situation in the Garner case, supra, was very similar to that herein involved and the Court therein determined that the facts presented a labor dispute within the jurisdiction of N.L.R.B.
It is the contention of appellees that such a minor part of their business affects interstate commerce, that for that reason jurisdiction would have been declined by N.L.R.B. had charges been filed. Admittedly no charges were filed by appellees with N.L.R.B. prior to the institution of these suits in the State Court.
In U.S.C.A. under Title 29, § 164 as amended in 1959 it is provided:
“(c) (1) The Board, in its discretion, may, by rule of decision or by published rules adopted pursuant to the Administrative Procedure Act, decline to assert jurisdiction over any labor dispute involving any class or category of employers, where, in the opinion of the Board, the effect of such labor dispute on commerce is not sufficiently substantial to warrant the exercise of its jurisdiction: Provided, That the Board shall not decline to assert jurisdiction over any labor dispute over which it would assert jurisdiction under the standards prevailing upon August 1, 1959.”
Thus, from the language therein used it appears to be premature and the state court is without jurisdiction to act on an instance such as is involved herein unless a declination of jurisdiction had previously been made by the Board. We would only resort to surmise to conclude what action the Board may have taken had charges been filed with the Board. However, it is not for us to resort to conjecture as to the action the Board would have taken, but until jurisdiction had affirmatively been declined by the Board, we are of the opinion the state court was without jurisdiction. Toomer v. Local No. 995, International Brotherhood of Electrical Workers, La.App., 131 So.2d 248; Derouen v. Lard, La.App., 121 So.2d 311.
In its brief counsel for appellant apprises us:
“ * * * After a hearing, identical preliminary injunctions were issued as follows:
“YOU ARE HEREBY COMMANDED, prohibited, enjoined and restrained in the name of the State of Louisiana, and of the 17th Judicial District Court of the State of Louisiana in and for the Parish of Lafourche, from picketing or causing any picketing of the W. S. Lafargue Elementary School Project, Thibodaux, Louisiana, or from doing any other acts which will result in, either directly or indirectly, the interference with petitioner’s business operations or which will interfere with petitioner’s business in any way.
“And you are so to remain enjoined, restrained and prohibited, until the further order of this Honorable Court.
“Witness the Honorable P. Davis Martinez, Judge of our said Court, this 22nd day of April, A. D., 1960.”
We find no such order in the record. The judgments of the Trial Court as we noted supra grant preliminary injunctions as prayed for. (Emphasis supplied)
*775 LSA-C.C.P., Vol. 1, Art. 3605, in part provides:
“An order granting either a preliminary or a final injunction or a temporary restraining order shall describe in reasonable detail, and not by mere reference to the petition or other documents, the act or acts sought to be restrained. * * * ” (Emphasis supplied)
Having concluded the Trial Court was without jurisdiction, the judgments are reversed.
Reversed.