386 So.2d 378 (1980)
GOOD HOPE REFINERIES, INC.
v.
OIL, CHEMICAL & ATOMIC WORKERS INTERNATIONAL, LOCAL 4-447.
No. 11478.
Court of Appeal of Louisiana, Fourth Circuit.
July 10, 1980.
Rehearing Denied August 5, 1980.
Adams & Reese, Michael G. Crow, New Orleans, for relator.
Hess & Washofsky, Dennis M. Angelico, New Orleans, for Local.
Before GULOTTA, BOUTALL and SARTAIN, JJ.
SARTAIN, Judge.
We granted writs in this cause to consider the validity of an order of the district court which transferred a rule for contempt from its civil docket to its criminal docket. The facts giving rise to the issue are not in dispute and present solely a question of law.
The litigants are Good Hope Refineries, Inc., a Texas corporation with its principal place of business situated in St. Charles Parish, hereinafter referred to as "Refinery", and Oil, Chemical, and Atomic Workers International, Local 4-447, hereinafter referred to as "Local", a labor organization whose members are employed by Refinery.
Pursuant to a vote of its membership, Local commenced a strike at 7:00 a.m. on March 1, 1980. On March 2 Refinery sought and obtained a temporary restraining order relative to certain activities of Local's membership. On March 4, pursuant to a stipulation, a preliminary injunction was issued as to both Local and Refinery enjoining each, their respective agents, members, contractors, sub-contractors, and "all persons acting in concert or participation with them" from engaging in specified conduct, etc., and in general designating the manner in which each party should conduct their respective affairs concerning picketing and the movement of traffic to and from public thoroughfares and the plant facility. The parties thus enjoined waived, each as to the other, the necessity of posting bond.
There then followed reciprocal citations for contempt wherein each party accused the other of violations of the provisions of the preliminary injunction. Prior to the return dates Local moved the court to transfer these contempt proceedings to the *379 criminal docket for trial by jury under the provisions of R.S. 23:848(3).[1]
The trial court in its written reasons for judgment, while noting previous decisions relating to the inherent power of the court under appropriate constitutional authority, concluded:
"However, Const.1921, Art. 7(2) has been refined by Const.1974, Art. 5(2): `___. The power to punish for contempt of court shall be limited by law.' And R.S. 23:848 has never received judicial scrutiny; And in U.M.W. v. Ark. Oak Flooring Co. [238 La. 108] 113 So.2[d] 899, the court stated `However, it does not necessarily follow from the fact that the injunction issued under the general law that the provisions of the Little Norris-LaGuardia Act, which have not been found unconstitutional were also inapplicable .' Further, in New Roads v. Dukes [La.App.] 312 So.2[d] 890, the court obliquely considered R.S. 23:848, and while holding it not applicable to the matter, since there was no labor dispute, it indicated that it would apply had the matter been a labor dispute. Finally, Board v. Bates [258 La. 1049] 249 So.2[d] 127, and Board v. Boisvert [258 La. 1062] 249 So.2d 132, were considered under the light of Duncan v. Louisiana, 391 U.S. 145 [88 S.Ct. 1444, 20 L.Ed.2d 491] and other cases. The rationale of these cases would be to make applicable the provisions of R.S. 23:848, to contempt proceedings in labor disputes.
"This court is of the opinion that the rationale of Gaspard, Godchaux Sugars, and Const.1921, Art. 7(2) should prevail: To allow R.S. 23:848 to deprive this court of its power to enforce the injunctive restrictions by summary contempt proceedings will, or could, precipitate irreparable injury to property rights, endanger the lives and safety of the people of the community, and result in breaches of the peace, all before the contempt matters can be heard in criminal court before a jury.
"Nonetheless, the apprehensions and speculations of this court are insufficient to deny application of a seemingly valid statute.
"Reluctantly, this court will remove the contempt proceedings to the criminal docket for this court in St. Charles Parish, and, shall order them allotted and brought to trial in accordance with the Criminal Rules of Court."
For reasons hereinafter stated, we hold that the trial judge erred.
The judge a quo was correct in his observation that the application for R.S. 23:848 (Acts 1934, No. 203) "has never received judicial scrutiny". However, we disagree with his conclusion that the 1974 Constitution [Art. 5(2)] "refined" or in anywise modified the earlier provisions of the 1921 Constitution [Art. 7(2)].
The 1921 Constitution, Art. 7, § 2, provided in pertinent part:
"The Supreme Court, the Courts of Appeal, and each of the judges thereof, ... and each district judge throughout the State ..., may issue writs of habeas corpus, in behalf of any person in actual custody in cases within their respective jurisdictions; and may also, in aid of their respective jurisdictions, original, appellate, or supervisory, issue writs of mandamus, certiorari, prohibition, quo warranto, and all other needful writs, orders and process, and where any of said writs are refused, the appellate courts shall indicate the reasons therefor."
Art. 19, § 17 states:
"The power of the courts to punish for contempt shall be limited by law."
*380 The relevant provision in the State Constitution of 1974 is found in Art. 5, § 2, which provides:
"A judge may issue writs of habeas corpus and all other needful writs, orders, and process in aid of the jurisdiction of his court. Exercise of this authority by a judge of the supreme court or of a court of appeal is subject to review by the whole court. The power to punish for contempt of court shall be limited by law."
A reading of the above constitutional provisions does not reflect any essential change. The 1974 article is simply a condensed or shorter version of provisions of similar import contained in the Constitution of 1921.
It is also clear from a reading of the proceedings of the constitutional convention that no change was intended. After the article was read to the convention, Judge Dennis (now Justice), chairman of the judiciary committee, explained:
"Fellow delegates, this represents no essential change from the present constitutional provisions which are contained in Section 2 and Section 17 of Article VII, of the 1921 Constitution.
"We have simplified the language somewhat but have not changed the substance of the law." (Proceedings, August 15, 1973, p. 207)
In response to a question from a fellow delegate concerning the significance of the phrase "may be limited by law" contained in the last sentence of the article, Justice Dennis replied:
"It relates primarily to statute law. We have proceeded upon the traditional theory that the power to punish is, for contempt of court, is inherent in the court but that the reasonable limitations may be placed upon it by legislative act." (Proceedings, August 15, 1973, pp. 707-708)
See also Hargrove, The Judicial Article of the Louisiana Constitution of 1974, 37 La.L. Rev. 765, 793 (1977).
R.S. 23:841, et seq., have their legislative origin in Act 203 of 1934, referred to as the "Little Norris-LaGuardia Act", modeled after the federal act of the same name. The purpose of the act was to limit the power of the court in the granting of injunctions in matters growing out of labor disputes. The earlier application of the act apparently presented no problem. In Dehan v. Hotel & Restaurant Employees, etc., 159 So. 637 (La. App. 2nd Cir. 1935), and Johnson v. Milk Drivers & Dairy Employees Union, etc., 195 So. 791 (La.App. 2nd Cir. 1940), it was held that under the provisions of the act and the particular facts presented, the court was without jurisdiction to issue an injunction. A review of these cases reveals that the purpose of the injunctions therein sought were to restrain peaceful picketing. To this extent we find these authorities are distinguishable on the facts from those cases that we hereinafter cite.
In Twiggs v. Journeymen Barbers, etc., 58 So.2d 298 (Orl.La.App.1952), cert. denied July 3, 1952, the issuance of a preliminary injunction against two competing unions was upheld on the theory that it was within the court's constitutional grant of authority to issue a preliminary injunction to prevent irreparable injury to "complainant's property".
In Douglas Public Service Corp. v. Gaspard, 225 La. 972, 74 So.2d 182 (1954), the Supreme Court of this state was presented with its first confrontation between the provisions of the anti-injunction statutes, R.S. 23:841 et seq., and the injunctive power of the court under its constitutional authority. In Douglas writs were granted to review the trial court's termination of a previously issued temporary restraining order and dismissal of plaintiff's suit for injunctive relief. In reversing and remanding, the court stated:
"For the courts to function in an orderly manner, and with equal protection to all, the Constitution not having provided otherwise, it became necessary for the legislature to establish the rules and regulations that would govern the procedure to be followed by those seeking this guaranteed protection, including the issuance of all needful writs and processes. Such *381 procedural statutes will be upheld in our courts so long as they do not violate our basic law. However, any act of the legislature, whether procedural or substantive, that infringes or trenches upon the constitutional prerogatives of the courts, cannot stand.
"With these fundamental principles so well known, and universally recognized under our republican form of government as absolutely essential for the maintenance of our way of life, it is difficult for us to understand how our learned brother below could find complainant's petition failed to allege an injury done it in its private and property rights and, by the dismissal of its suit, to, in effect, close the doors of his court to it in its effort to have these rights protected.
"The petition clearly states that the twenty-one named defendants are trespassing upon the private property of the petitioner and are committing numerous acts of violence, coercion, and intimidation with respect to its property rights and with respect to the rights of its employees and those of the employees of its customers, which acts continued even up until the day of the trial of the case, when a supplemental petition was sought to be filed showing additional acts of violence that had just that day occurred, including the cutting of the petitioner's lines of communication.
* * * * * *
"It follows that the provisions of the so-called anti-injunction act that seek to limit the jurisdiction of the district courts of this state in the granting of immediate relief, if that is necessary for the protection of rights and property, are illegal and ineffective."
While one concurring opinion agreed with the result on the basis that the statutes do not apply to acts of violence, the author felt that there was no need to question the validity of the statutes themselves. The dissenting opinion expressed the view that the statutes were a reasonable legislative restraint on the court's authority. For a criticism of the majority holding, see 15 La.L.Rev. 324 (1955).
In reaffirming its position in the Douglas case, the Supreme Court in Goudchaux Sugars v. Chaisson, 227 La. 146, 78 So.2d 673, 682 (1955) stated:
"In the Douglas Public Service Corp. case we held that the legislative statutes prescribing procedural rules for obtaining needful writs and processes would be upheld so long as they did not violate our basic law, but that such acts, whether procedural or substantive, infringing or trenching upon the constitutional prerogatives of the courts, could not stand. As in that case, it is evident under the facts here that resort to these statutory provisions would, in effect, have closed the doors of the courts to the plaintiffs seeking relief from impending irreparable injury as well as destruction of the private and property rights. Additionally, it would have so hampered the court in granting relief their constitutional guarantee of protection would amount to no protection at all and would, actually, deprive them of their property without due process of law. These exceptions are, therefore, without merit."
While a perusal of the above authorities leaves some doubt as to whether the sections under the act, now R.S. 23:841-844, were in fact declared unconstitutional in the Douglas and Goudchaux cases, above, or whether the attempted invocation of these sections under the facts presented would have resulted in an unconstitutional infringement upon the court's authority, one result of these authorities seems clear. The statutes themselves do not apply where injunctive relief is sought to prevent acts or threats of violence, intimidation or coercion to the extent that the public's health, safety or general welfare is at stake. The statutes themselves appear to make this exception.
The transcript of the proceedings in this cause on the rule for the preliminary injunction makes it quite clear that there were serious acts of violence, threats and intimidation which posed a serious danger to the public. The trial judge during the course of the hearing made it quite clear that this was his primary concern.
*382 Accordingly, we hold that the provisions of R.S. 23:841 et seq., and particularly R.S. 23:848, are not applicable and the general law relating to the injunctive relief applies.
For these reasons the writ issued herein is made peremptory, and the order of the district court transferring these proceedings to the criminal docket is reversed and set aside. The stay order previously issued by this court is recalled and this matter is remanded for further proceedings on the civil docket.
All costs relating to this writ are assessed against respondent.
WRIT MADE PEREMPTORY, REVERSED, AND RECALLED.
NOTES
[1] R.S. 848(3) reads:

"The right to remove the said proceeding to the criminal docket for a speedy and public trial by an impartial jury of five from the judicial district wherein the contempt shall have been committed, provided that this requirement shall not be construed to apply to contempts committed in the presence of the court or so near thereto as to interfere directly with the administration of justice or to apply to the misbehavior, misconduct, or disobedience of any officer of the court in respect to the writs, orders, or process of the court."