403 So.2d 632 (1981)
BATON ROUGE COCA-COLA BOTTLING COMPANY, LTD.
v.
GENERAL TRUCK DRIVERS, WAREHOUSEMEN AND HELPERS, LOCAL UNION NO. 5, Affiliated with International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America.
No. 80-C-2700.
Supreme Court of Louisiana.
June 22, 1981.
Rehearing Denied September 28, 1981.
*633 Lawrence R. Anderson, Jr. and William Hardy Patrick, III of Anderson, Anderson & Steffes, Baton Rouge, for defendant-applicant.
G. Michael Pharis, Tom F. Phillips and Louis M. Phillips of Taylor, Brooks, Porter & Phillips, Baton Rouge, for plaintiffs-respondents.
WATSON, Justice.
The issues are: (1) whether LSA-R.S. 23:844, the "Little Norris-LaGuardia Act," governs the issuance of an injunction in a labor dispute; and (2) whether a preliminary injunction was issued in compliance with the Act.
Plaintiff, Baton Rouge Coca-Cola Bottling Company, Ltd., filed a petition for a temporary restraining order. Named as defendant was General Truck Drivers, Warehousemen and Helpers Local Union No. 5, affiliated with International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America. The trial court granted the temporary restraining order, which prohibited the defendant Union from engaging in certain activities and imposed limitations on the location and number of pickets at the entrance to plaintiff's plant. The Union filed a motion to dissolve the temporary restraining order and asked damages, alleging that the order was wrongfully issued. Alternatively, it sought an increase in the $1,000 bond which Coca-Cola had been required to provide. The court denied the motion to dissolve, granted a preliminary injunction and increased the bond to $2,500. The court of appeal affirmed and a writ was granted to review the decision. 394 So.2d 1246 (La., 1980).
Coca-Cola's petition stated that the Union had been recognized by the NLRB as the bargaining representative for employees at Baton Rouge Coca-Cola. Because negotiations were unsuccessful, some of these employees had gone on strike. Defendant had established picket lines at the two employee entrances to the plant.
Coca-Cola's petition alleged that:
"... mass picketing and congregation of pickets have occurred, intimidation of persons seeking lawful ingress to and egress from the plant has occurred, said picketers have used threatening, vile, and abusive language, ingress to and egress from said plant has been obstructed and hindered...." (Tr. 5)
Additionally, Coca-Cola contended that participants in the picket line had spit upon those entering and leaving the plant and had disrupted traffic on U.S. Highway 61 (Airline Highway).[1]
Plaintiff's petition asserted that the mass picketing violated its constitutional rights, posed a continuing threat to peace and interfered with operation of its business.
The restraining order issued by the district court provided in pertinent part, as follows:
"... Teamsters Local No. 5, and all persons in active concert or participation with the said Teamsters Local No. 5, be, and they are hereby, temporarily restrained, enjoined and prohibited from all of the following:
"A. Threatening, intimidating, cussing, using vile, indecent and vulgar language, molesting, restraining, coercing, committing acts of violence and compulsion against, or in any way interfering with petitioners, their agents or employees as they enter or leave or work about the Baton Rouge Coca-Cola plant in East Baton Rouge Parish, Louisiana, or as they *634 make their deliveries or perform their services in the Greater Baton Rouge area.
"B. Massing or congregating within four hundred feet (400') of the entrances to the Baton Rouge Coca-Cola plant in East Baton Rouge Parish, Louisiana, or in any way interfering with or obstructing the free access of Baton Rouge Coca-Cola's employees, suppliers, and deliverymen at said plant.
"C. Engaging in any picketing, patrolling or congregating, forming a physical barrier of any kind whatsoever at or near the Baton Rouge Coca-Cola entrances to the Baton Rouge Coca-Cola plant, except that defendants may station not more than three (3) persons at each entrance to the plant, on public property, for the purpose of picketing or other peaceful activities not prohibited hereby except that no picket shall remain stationary but shall continuously walk in a straight line the entire width of the roadway, an interval of ten feet (10') shall be maintained between walking pickets.
"D. Spitting, kicking or striking the vehicles or persons of petitioners agents or employees as they enter, leave or work at the Baton Rouge Coca-Cola plant or as they make their deliveries or work in the Greater Baton Rouge area.
"IT IS FURTHER ORDERED by this Court that the Sheriff of East Baton Rouge Parish and all law enforcement agencies shall enforce this order and require compliance by defendants with the terms hereof...." (Tr. 10-11)
The preliminary injunction differs in some respects from the temporary restraining order. The injunction reduces the area of restriction from 400 to 200 feet, prohibits picketing within 25 feet of U.S. Highway 61, and omits the provision which directs law enforcement agencies to enforce the order.
The trial court found that this was not a case of peaceful picketing. The trial court concluded that:
"... there is an extreme possibility that violence will be provoked and intimidation will be engendered." (Tr. 448)
The Union contends that the lower courts failed to apply the provisions of LSA-R.S. 23:844, the "Little Norris-LaGuardia Act,"[2] to the facts of this case. The allegations and findings of fact which that statute requires before an injunction can be issued in a labor dispute were not made.[3] In particular, *635 the Union maintains that Coca-Cola failed to allege and prove that local law enforcement officers were unable to furnish adequate protection.
The trial court held that the Little Norris-LaGuardia Act is not applicable where injunctive relief is sought to prevent violence. The Court of Appeal affirmed, relying primarily on Douglas Public Service Corp. v. Gaspard, 225 La. 972, 74 So.2d 182 (1954).
In Douglas plaintiff sought injunctive relief against its striking employees. Defendants filed exceptions based on plaintiff's failure to comply with the provisions of LSA-R.S. 23:844. The statute was declared "illegal and ineffective."[4]
Douglas concluded, without supporting reasons, that compliance with the statute denied due process.[5] As Justice Hawthorne noted in dissent, any due process infirmity in our statute is shared by the federal act. In fact, neither law denies due process.
Both acts are legislative determinations of how the conflicting interests of employers and employees should be accommodated. Rather than denying due process, LSA-R.S. 23:844 insures it by providing reasonable notice and an opportunity for workers to be heard prior to the granting of injunctive relief.[6] The declaration of policy in LSA-R.S. 23:843 recognizes that injunctive relief "... is peculiarly subject to abuse in labor litigation."
The statute is not an unconstitutional infringement on the courts' jurisdiction to grant injunctive relief. Injunctions are not prohibited in labor disputes, but preclusive procedures and guidelines must be followed before that relief is available.
The legislature has the power to define the substantive and procedural rights of citizens. The Code of Civil Procedure articles on injunctions are representative examples of the exercise of this power.[7] The Little Norris-LaGuardia Act is no less valid than the Code articles. Because of the special considerations present in labor disputes, it establishes a set of special rules. Neither the Code of Civil Procedure articles on injunctions nor LSA-R.S. 23:844 limit the courts' jurisdiction in granting injunctive *636 relief. Both are valid legislative provisions.
Coca-Cola argues, in reliance on Douglas, that LSA-R.S. 23:844 deprives a judge of his constitutional power to issue "all other needful writs, orders and process in aid of the jurisdiction of his court." LSA-Const. Art. V, § 2. However, requiring courts to find certain facts and follow certain procedures before issuing injunctions in labor disputes does not infringe on this constitutional authority. The challenged statute does not prohibit the courts from issuing temporary restraining orders and injunctions; it merely imposes restrictions with regard to notice, delay, findings of fact, and opportunity for hearing.
The legislature has seen fit to regulate injunctive relief in other areas.[8] One example is LSA-C.C.P. art. 3601 which prohibits an injunction in some cases involving the expenditure of public funds. In Wall v. Close, 201 La. 986, 10 So.2d 779 (1942) the constitutionality of LSA-R.S. 13:4431, which allows suspensive appeals in certain cases where an injunction has been issued, was upheld against a challenge identical to that made in the present case.
Courts in other states have concluded that the legislature may regulate such proceedings. The Wisconsin Supreme Court held that its Little Norris-LaGuardia Act did not diminish the jurisdiction of its constitutionally created courts but simply changed the substantive law. American Furniture Co. v. I.B. of T.C. and H., Etc., 222 Wis. 338, 268 N.W. 250 (1936). In Goldfinger v. Feintuch, 276 N.Y. 281, 11 N.E.2d 910 (1937) the New York Little Norris-LaGuardia Act was upheld against constitutional attack. A New Jersey court has rejected the contention that procedural requirements for the issuance or labor injunctions breach the constitutional equity jurisdiction of the courts. U.S. Pipe & Foundry Co. v. United Steelworkers, 59 N.J.Super. 240, 157 A.2d 542 (1960). In Fenske Bros. v. Upholsterers' International Union, 358 Ill. 239, 193 N.E. 112 (1934) the Illinois Supreme Court held that forbidding the enjoining of peaceful picketing does not curtail the inherent power of equity courts.
Laws which limit or regulate the courts' power to issue injunctions are not unconstitutional limitations upon a court's power to do what is necessary to aid or preserve its jurisdiction. LSA-R.S. 23:844 is not a restriction on the jurisdiction of the courts. Rather it is a modification of substantive law and serves to protect the rights of laborers to engage in certain types of picketing free from the threat of abusive use of injunctions.
Since LSA-R.S. 23:844 is not constitutionally defective, it must be applied to this proceeding. This is a case "involving or growing out of a labor dispute." [9] The statute *637 requires that testimony be presented and findings of fact be made in six areas.[10]
The Union asserts that Coca-Cola failed to allege and prove the sixth requirement of LSA-R.S. 23:844,[11] which is:
"(6) That the public officers charged with the duty to protect complainant's property have failed or are unable to furnish adequate protection."
A review of Coca-Cola's petition and of the transcript of the preliminary injunction hearing supports this contention. Coca-Cola's petition fails to allege that public officers charged with the duty to protect the company's property (i. e., city police and the sheriff's department) have failed or are unable to furnish adequate protection. The transcript of the hearing on the preliminary injunction reveals that Coca-Cola failed to undertake proof of this element.
LSA-R.S. 23:844 requires allegations and proof of public officers' failure or inability to furnish protection before an injunction may be issued in a labor dispute. Because of failure to comply with this statutory requirement, the preliminary injunction was improperly issued. It must be dissolved.
For the foregoing reasons, the judgment of the court of appeal is reversed. The preliminary injunction issued by the district court is vacated and dissolved. The case is remanded for disposition consistent with this decision.
REVERSED AND REMANDED.
MARCUS, J., concurs and assigns reasons.
BLANCHE, J., dissents for reasons assigned.
MARCUS, Justice (concurring).
While I agree with the majority that La.R.S. 23:844 does not restrict the constitutional power of the courts to issue "all other needful writs, orders, and process" but merely provides a special procedure that should be followed before issuing injunctions in labor disputes, I do believe that in a given situation where it is clearly shown that violence to persons or property is imminent and time to comply with the procedure set forth in the statute is not possible, the courts may exercise their constitutional grant of authority without requiring compliance with this statute. However, I do not consider that such a showing was made here. Hence, the trial judge erred in granting a temporary restraining order and preliminary injunction without requiring compliance with La.R.S. 23:844. Accordingly, I respectfully concur.
BLANCHE, Justice (dissenting).
I respectfully dissent from the majority opinion for the following reasons. In my *638 view, despite the provisions of R.S. 23:844, a Louisiana court has the jurisdiction and authority under the Constitution of this state to enjoin non-peaceful labor picketing. I further disagree with the majority's overruling of Douglas Public Service Corp. v. Gaspard, 225 La. 972, 74 So.2d 182 (1954).
I note at the outset that the doctrine of federal preemption operates in the labor relations area to preclude a state's exercise of its jurisdiction. However, as the United States Supreme Court noted in Lodge 76, International Association of Machinists and Aerospace Workers, AFL-CIO, et al. v. Wisconsin Employment Relations Commission, et al., 427 U.S. 132, 96 S.Ct. 2548, 49 L.Ed.2d 396 (1976):
"`The national ... Act ... leaves much to the states, though Congress has refrained from telling us how much. We must spell out from conflicting indications of congressional will the area in which state action is still permissible.' Garner v. Teamsters, Chauffeurs and Helpers Local Union, 346 U.S. 485, 488, 74 S.Ct. 161, 164, 98 L.Ed. 228 (1953). Federal labor policy as reflected in the National Labor Relations Act, as amended, has been construed not to preclude the States from regulating aspects of labor relations that involve conduct touch[ing] interests so deeply rooted in local feeling and responsibility that ... we could not infer that Congress had deprived the States of the power to act.' San Diego Building Trades Council, Millmen's Union v. Garmon, 359 U.S. 236, 244, 79 S.Ct. 773, 779, 3 L.Ed.2d 775 (1959). Policing of actual or threatened violence to persons or destruction of property has been held most clearly a matter for the states.2" (96 S.Ct. at 255)
2 Thus, International Union, United Automobile, Aircraft and Agricultural Implement Workers v. Russell, 356 U.S. 634, 78 S.Ct. 932, 2 L.Ed.2d 1030 (1958), upheld state-court jurisdiction of a common-law tort action against a union to recover compensatory and punitive damages for malicious interference with the plaintiff's lawful occupation by mass picketing and threats of violence that prevented the plaintiff from entering the plant and engaging in his employment; Youngdahl v. Rainfair, Inc., 355 U.S. 131, 78 S.Ct. 206, 2 L.Ed.2d 151 (1957), sustained state-court power to enjoin striking employees from threatening or provoking violence or obstructing or attempting to obstruct the free use of the streets adjacent to the struck plant, or free ingress and egress to and from the property; International Union, United Automobile, Aircraft and Agricultural Implement Workers v. Wisconsin Emp. Rel. Board, 351 U.S. 266 [76 S.Ct. 794, 100 L.Ed. 1162] (1956) sustained state authority to vest jurisdiction in a state labor relations board to enjoin violent union conduct; United Constr. Workers v. Laburnum Constr. Corp., 347 U.S. 656, 74 S.Ct. 833, 98 L.Ed. 1025 (1954), held a state court not precluded from hearing and determining a common-law tort action based on conduct which, although an unfair labor practice under federal law, constituted threats of violence and intimidation that forced an employer to abandon all its projects in the area. In short, a State still may exercise `historic powers over such traditionally local matters as public safety and order and the use of streets and highways,' Allen-Bradley Local v. Wisconsin Emp. Rel. Board, 315 U.S. 740, 749, 62 S.Ct. 820, 825, 86 L.Ed. 1154 (1942), for `[p]olicing of such conduct is left wholly to the states.' International Union, U. Automobile Workers v. Wisconsin Emp. Rel. Board, 336 U.S. 245, 253, 69 S.Ct. 516, 521, 93 L.Ed. 651 (1949)." (96 S.Ct. at 2551-52)
* * * * * *
The Court has apparently recognized the strong interest a state has in regulating such activities and sanctions the exercise of state injunctive powers to restrain these picket line tactics. However, a state court may not enjoin the peaceful aspects of picketing although accompanied by non-peaceful picketing, merely because of the existence of some non-peaceful picketing, unless there is established a pattern of violence which would inevitably reappear in the event picketing were later resumed. Youngdahl, et al. v. Rainfair, Inc., 355 U.S. 131, 2 L.Ed.2d 151, 78 S.Ct. 206 (1957), citing Milk Wagon Drivers Union v. Meadowmoore Dairy, Inc., 312 U.S. 287, 85 L.Ed. 836, 61 S.Ct. 552, 132 ALR 1200.
After the trial of the motion for a preliminary injunction, the trial judge emphasized that "The court has not before it an incidence where an injunction is being sought to prevent a peaceful picket. This is not what is before the court." Based upon the testimony and affidavits which were admitted *639 in evidence, the court specifically found that in the course of the picketing activities, there were acts of violence, or threats of violence, and threats of intimidation as well as property damage. The court further found that there was mass picketing and "an extremely enormous amount of vile and abusive language directed to and toward the employees of Coca-Cola." The judge concluded that "given these acts under the given circumstances, [and] ... this particular picket line, the Court finds that there is an extreme possibility that violence will be provoked and intimidation will be engendered." The court found that there were incidents where abusive language was used to and/or toward employees of Coca Cola which language the court considered to be "calculated to cause violence." In the judgment of this trial court, there were incidents where employees were denied freedom of ingress to and egress from the Coca Cola plant in incidents where picketers stood in front of a vehicle and would not move. The court viewed this particular picket of the Coca Cola plant as a "unique situation" in that the plant was located just off of U.S. Highway 61, which is a heavily travelled thoroughfare. According to the court, there had been incidents where employees of Coca Cola had not been able to make exits safely from the highway "inasmuch as they had to stop because of the location of the pickets." After making these findings of fact, the court issued the above described injunction.
The court of appeal affirmed, ruling that the "findings of the trial court that the picketing was not peaceful, and that there were threats, violence and intimidation by the picketers, are clearly substantiated by the record." My review of the record shows that these findings of fact of the trial court are not clearly erroneous. In light of these findings of fact, I would further hold that the trial court was not preempted by the federal system from exercising its jurisdiction to enjoin the non-peaceful picketing occurring at the Coca Cola plant. In a factually similar case, the United States Supreme Court affirmed the jurisdiction of a state court to enjoin threats, intimidation or coercion of employees of the picketed employer by the union, and obstruction or attempts to obstruct the free use of streets adjacent to the employer's place of business, and the free ingress to and egress from employer's property. Youngdahl, supra.
The more difficult issue presented to this Court in this case is not whether a Louisiana court can exercise its jurisdiction to enjoin non-peaceful picketing, but whether the court could issue the particular injunction in this case under existing state law based upon the above indicated findings of fact.
Relator-union contends that the grant of the preliminary injunction in favor of Coca Cola was erroneously affirmed by the court of appeal for several reasons. The union's main contention is that both lower courts failed to apply the provision of R.S. 23:844, of the "Little Norris LaGuardia Act" to the facts of this case and, consequently, did not make findings of fact that are a prerequisite to the issuance of an injunction in a labor dispute in Louisiana.
This statute is almost identical to 29 U.S.C. § 107 of the federal "Norris LaGuardia Act", which was adopted two years prior to Louisiana's adoption of its own "Little Norris LaGuardia Act". A related statute appearing in both "Norris LaGuardia Acts" specifically precludes the courts' "jurisdiction" (in the federal act) or "authority" (in the state act) to issue injunctions or restraining orders to prohibit certain acts. One such protected activity in the state statute (R.S. 23:841(5)) is "Giving publicity to and obtaining or communicating information regarding the existence of, or the facts involved in, any dispute, whether by advertising, speaking, patrolling any public street or any place where persons may lawfully be, without intimidation or coercion, or by any other method not involving fraud, violence, breach of the peace of threat thereof." (emphasis added)
Part 5 of R.S. 23:841 inferentially seems to authorize the issuance of an injunction or temporary restraining order in instances where the publicizing of a labor dispute is *640 accompanied by "intimidation, coercion, or by any other method involving fraud, violence, breach of the peace or threat thereof." Under this interpretation of this provision, in the same factual situations where the United States Supreme Court has ruled our state court may act to issue an injunction (threats, intimidation or coercion of employees by union picketers, obstruction of the free use of streets adjacent to an employer's place of business and free ingress to and egress from employer's plant, Youngdahl, supra), our court would be allowed, under our state statutory law, to issue an injunction or restraining order. However, the provisions of R.S. 23:844 would seemingly prohibit the exercise of a court's power to issue an injunction, despite such findings of fact. R.S. 23:844 mandates that the court make the enumerated factual findings prior to the issuance of an injunction, which required findings are practically identical to those in the federal version of the "anti-injunction" statute. (There is no specific mention of factual finding (5) of the state statute in the federal statute.)
The trial judge ruled that the "Little Norris LaGuardia" provisions were not applicable where injunctive relief was sought to prevent acts or threats of violence, intimidation, coercion, to the extent that the public's health, safety and general welfare is at stake." The court of appeal affirmed this ruling, citing Good Hope Refineries v. Oil, Chemical, etc., 386 So.2d 378 (La.App. 4th Cir. 1980); Douglas Public Service Corp. v. Gaspard, 225 La. 972, 74 So.2d 182 (1954); Godchaux Sugar v. Chaisson, 227 La. 147, 78 So.2d 673 (1955).
Article 5, § 2 of the Louisiana Constitution provides that "A judge may issue writs of habeas corpus and all other needful writs, orders and process in aid of the jurisdiction of his court ...". This provision establishes the court's power to issue all needful writs, orders and process in the exercise of its jurisdiction (which jurisdiction, in the case of a district court, extends over all civil and criminal matters; La. Const. Art. 5, § 16). This Court has previously recognized a conflict between the provisions of the Little Norris LaGuardia Act and the prerogative of a court to grant injunctive relief as authorized by the Louisiana Constitution.[1]
In Douglas Public Service Corp., et al. v. Gaspard, et al., 74 So.2d 182 (La.1954), this Court adopted the reasoning of a court of appeal opinion, which differentiated between the constitutionality of the federal "anti-injunction statute" as opposed to the Louisiana counterpart:
"In a recent well-considered opinion, the Court of Appeals for the Parish of Orleans pointed out that Congress, under the authority specifically granted it by the Constitution of the United States to create and regulate the jurisdiction and powers of all inferior federal courts, was well within its right to effectively prohibit these courts from issuing injunctions in labor disputes by the enactment of the Norris LaGuardia Act, 29 U.S.C.A. § 101 et seq., while the power and jurisdiction of the courts of this state flows from constitutional grants 3 and the legislature is powerless to interfere with their prerogatives except as specifically authorized by the constitution, concluding that `The powers granted to the trial judge by the Constitution must take precedence over any provisions of any sort of legislation which runs counter thereto, whether such legislation pertains to capital, labor, or any other subject.' The decision in that caseTwiggs v. Journeymen Barbers, etc., La.App., 58 So.2d 298, 302received the approval of this court when we refused the writs sought for its review with the comment that `The judgment is correct'."
3 Under the constitution of 1921 the district courts are vested with original jurisdiction in all civil matters, Section 35 of Article VII, and may `issue writs of mandamus, certiorari, prohibition, *641 quo warranto, and all other needful writs, orders and process' in aid of their jurisdiction. Section 2 of Article VII."
* * * * * *
The wording of 29 U.S.C. 107(e) of the Norris LaGuardia Act expresses an obvious intent on the part of Congress to take away the jurisdiction of a federal court to issue an injunction where a labor dispute is taking place, until the party seeking the injunction can prove that state institutions have failed to protect his rights. As noted above, this limitation in no way violates any federal constitutional provisions since that constitution does not specifically grant powers to the federal courts but, instead, authorizes Congress to create and regulate the jurisdiction and powers of all inferior federal courts. The limitation on jurisdiction is not only legally justifiable but is also a valid and logical one.
Again, the United States Supreme Court has recognized that the policing of actual or threatened violence to persons or destruction of property is a matter for the states, and a state may appropriately regulate such "conduct touch[ing] interests so deeply rooted in local feeling and responsibility." San Diego Building Trades Council, supra at 779.
In Kohler Company v. Sheet Metal Workers International Association, 486 F.Supp. 1016 (1979) at 1018, the court held that "A purpose of the Congress, in adopting the Act, undoubtedly was to leave in the hands of state and local authorities those problems of public order which they [are] capable of handling ...", Cimarron Coal Corp. v. District 23, United Mine Workers, C.A. 6th (1969), 416 F.2d 845 at 847, cert. den. 397 U.S. 919, 90 S.Ct. 928, 25 L.Ed.2d 100 (1970). "This Court will not act precipitately to enforce private property rights hindered by a labor-management dispute while there is hope that the state judicial and law enforcement institutions may enforce the decrees of the state courts ...".
However, according to the majority in this case, when the Louisiana Legislature adopted the Little Norris LaGuardia Act the local state courts were stripped of their power or authority to issue such decrees in a labor dispute until there was proof of a breakdown of police law enforcement protection. The practical problem with such a requirement was addressed by the Supreme Court of Washington in 1936 in Blanchard v. Golden Age Brewery Co., 63 P.2d 397 at 407, and is discussed below. That court pointed out that one whose rights are being invaded is not required to seek the grace or await the pleasure and consequent delay of police intervention nor is he required to argue his case to a policeman. The proper forum for such matters is a court (emphasis added).
I also find legal problems with the majority position. Aside from a possible violation of constitutionally mandated separation of powers, a statute which precludes a Louisiana state court from issuing an injunction in a labor dispute setting infringes upon the constitutional authority granted a Louisiana court in Art. 5, § 2 to issue all needful writs, orders and process in aid of its jurisdiction.
The Douglas majority accurately perceived this infringement in 1954 and consequently did not apply the provisions of § 844 of the Little Norris LaGuardia Act, ruling them unconstitutional. Douglas was correct in recognizing that a state court should have the authority to enjoin certain activities incident to a labor dispute and in holding that a statutory limitation on this authority could not be sanctioned. In my view, the majority erred in overruling Douglas.
The Douglas opinion stipulated that:
"For the courts to function in an orderly manner, and with equal protection to all, the Constitution not having provided otherwise, it became necessary for the legislature to establish the rules and regulations that would govern the procedure to be followed by those seeking this guaranteed protection, including the issuance of all needful writs and processes. Such procedural statutes will be upheld in our courts so long as they do not violate our basic law. However, any act of the legislature, whether procedural *642 or substantive, that infringes or trenches upon the constitutional prerogatives of the courts, cannot stand. 74 So.2d at 187.
In that case, this Court affirmed that grant of a temporary restraining order against certain union actions incident to picketing although, according to the dissent, the plaintiff seeking the restraining order "made no effort to comply with the procedural requirements set out for obtaining injunctive relief in a labor dispute." In Godchaux Sugars, Inc. v. Chaisson, et al., supra, this Court again refused to require the listed findings of fact in R.S. 23:844 prior to the issuance, in that case, of a preliminary injunction in a labor dispute. I am aware of no Louisiana case in which R.S. 23:844 was applied to make these statutory findings of fact a prerequisite to the issuance of a restraining order or injunction in a labor dispute.
R.S. 23:844 is not merely a statute which sets out a procedure for seeking an injunction in order to promote the orderly and efficient administration of justice. Rather, the wording of the statute ties the hands of the court, forbidding it to issue an injunction unless six specific factual findings are made. As noted at 29 Tulane L.Rev. 791 at 793, the provision constitutes a partial withdrawal of the jurisdiction of a court to issue an injunction in a labor dispute. I recognize that it is within the power of the legislature to create new substantive rights. Had the legislature chosen to do so, it could have established substantive rights for labor unions to express their views and grievances in certain manners. This Court would have then had a duty to abide by legislative determination of a substantive right if the exercise of that right did not infringe on the constitutional protections or rights granted to others. Instead, the legislature attempted to limit the courts' constitutional authority to issue injunctions. I cannot place a seal of constitutional approval on a limitation on a court's authority to issue an injunction when, as in the instant case, non-peaceful picketing occurs.
In Blanchard v. Golden Age Brewing Co., 188 Wash. 396, 63 P.2d 397 (1936), the Supreme Court of Washington struck down an "anti-injunction" statute practically identical to our own (that statute, like the federal counterpart, also did not include a provision parallel to (5) of our statute). That Court noted that:
"... by the Constitution, and independently of any legislative enactment, the judicial power over cases in equity have been vested in our courts, and, in the absence of any constitutional provision to the contrary, such power may not be abrogated or restricted by the legislative department. Any legislation, therefor, the purpose or effect of which is to divest, in whole or in part, a constitutional court of its constitutional powers, is void as being an encroachment by the legislative department upon the judicial department." 63 P.2d at 405.
The court distinguished the "anti-injunction statute" from reasonable regulations governing court procedure, stipulating that the courts will always recognize reasonable regulation prescribed by the legislature, but the courts are not required to recognize a legislative restriction which has the effect of depriving them of a constitutional grant of one of their inherent powers. The Washington court particularly attacked certain areas of the Washington "anti-injunction statute", including the counterpart to Louisiana's R.S. 23:844(6), which required a finding that public officers charged with a duty to protect complainant's property are unable or unwilling to furnish adequate protection:
"One whose rights are invaded and who is faced with an irreparable injury is not required to seek the grace, or to await the pleasure and consequent delay, of public officers. He is not required to argue his case or to address his importunities to a policeman, nor is such officer to be expected to determine the civil rights of a litigant. The proper forum for such matters is a court." 63 P.2d at 407.
In Busch Jewelry Co. v. United Retail E. Union Local 830, 281 N.Y. 150, 22 N.E.2d 320 (1939), the Court of Appeal of New *643 York made the observation, in dicta, regarding the New York anti-injunction statute that, if the intent and effect of the anti-injunction statute was to deprive the court of its jurisdiction to enjoin dangerous, illegal acts which constitute disorderly conduct and breach of the peace "it is to that extent unconstitutional and void as an attempt to abridge the jurisdiction of the court." 22 N.E.2d at 322.
Chapter 2 of Title I of Book VII of the Code of Civil Procedure sets out procedural rules for the issuance of injunctions in Louisiana. The last article in this chapter specifically recognizes that "The provisions of this Chapter do not limit the issuance by a court of any writ, process, or order in aid of its jurisdiction." C.C.P. art. 3613. This is an apparent legislative recognition of the broad powers granted to Louisiana courts by Art. 5, § 2 of the Louisiana Constitution to issue all needful writs, orders and process in aid of its jurisdiction.
In 1959, the Louisiana Supreme Court ruled that R.S. 26:304 was unconstitutional. Roksvaag v. Reily, 237 La. 1094, 113 So.2d 285 (1959). That statute sought to deprive the courts of jurisdiction to enjoin the withholding, suspension or revocation of liquor licenses. This Court found that the statute was in contravention of Art. 7, § 2 of the Louisiana Constitution (now Art. 5, § 2), the same constitutional provision at issue in this case, citing Twiggs, Douglas and Godchaux Sugar (all cases dealing with the constitutionality of the "anti-injunction statute", and all cited supra).
Once again, we emphasize that the United States Supreme Court has specifically recognized the overriding interest of a state court in preventing threats, intimidation or coercion of employees, obstruction of the free use of streets adjacent to an employer's place of business and free ingress and egress to and from employer's plant, Youngdahl, supra, and where such situations are found to exist, allows the state to act despite federal preemption in the area of labor relations. As discussed above, one of the provisions of the Little Norris LaGuardia Act itself seems to contemplate the issuance of injunctions where picketing is non-peaceful. The trial court found such a situation to exist and granted employer's request for a preliminary injunction to prevent such actions. As I have noted above, the court rightfully exercised its jurisdiction and, in view of its findings of fact, I would hold that the court had the power to issue an injunction against the non-peaceful picketing. A review of the terms of that injunction shows that it is reasonably designed to prohibit only "non-peaceful" picketing. I would affirm the court of appeal ruling upholding this injunction.
In reaching this result, I would rule that the provisions of R.S. 23:844 are unconstitutional insofar as they limit a court's power to enjoin non-peaceful picketing. In my view, the court was authorized to issue the injunction in the instant case, and an injunction against non-peaceful picketing is indeed "needful" in view of the fact that our courts have been specifically authorized by the United States Supreme Court to act in instances of non-peaceful picketing, that one of the statutes of the "Little Norris LaGuardia Act" itself seems to recognize that unions only have a right to picket peacefully, and because of the importance of rights which are threatened by non-peaceful picketing. For example, where an employee's right to choose to work at his occupation, an employer's right to operate his business, and the physical safety and property of members of the public and of persons seeking ingress to and egress from an employer's plant are threatened by non-peaceful picketing, a court should have the authority to enjoin such activities for the protection of these rights.
I fully recognize the vitally important right of an individual to join a labor union and for that individual and union to pursue legal channels for the expression of its views and of grievances it may have with a particular employer. I further recognize that picketing is a valid, legal means for the communication of union grievances. However, I do not recognize a right to engage in non-peaceful picketing which threatens the physical safety and property of persons *644 seeking to enter or exit an employer's plant, the property of the employer, or the safety and property of the public.
I would not, however, sanction the grant of an injunction in a labor dispute without proof of recurrent and serious, rather than isolated and minor, instances of non-peaceful picketing. The record shows that instances of non-peaceful picketing in the present case were recurrent and serious. I would, therefore, affirm the terms of the injunction as did the court of appeal.
DENNIS, Justice, concurring in denial of rehearing.
I respectfully concur in the denial of a rehearing.
Although I am inclined to believe that the "Little Norris-LaGuardia Act's" mandatory requirement of the forty-eight hour delay before a temporary restraining order may be granted is an unwarranted restriction upon the court's power to grant a conservatory writ of injunction in a case in which all other statutory requisites have been met, that issue is not presented in this case; nor do I think that the invalidity of that provision would prove fatal to the remainder of the statute.
MARCUS, Justice (concurring in denial of rehearing).
I concur in the denial for rehearing for reasons assigned in my concurring opinion.
LEMMON, Justice, concurring in denial of rehearing.
I concur for the reasons stated by Justice Dennis. While the 48-hour delay is a statutory rule that should be adhered to in almost every case, the Constitution authorizes issuance of needful writs in an exceptional case.
BLANCHE, Justice (dissenting from denial of rehearing).
This writer would grant a rehearing for reasons stated in his dissent, and further notes that, henceforth, our citizens will be unable to protect their property rights in a labor dispute for a period of 48 hours, and then only after a showing that the police have not acted to protect these rights.
Non-peaceful picketing is all this case is about. It is wrong and we should not limit our right to enjoin it at any time.
NOTES
[1] Coca-Cola attached to its petition the affidavits of eighteen persons, mostly employees. These affidavits cited various instances of verbal abuse, spitting, and striking of automobiles by picketers.
[2] So named because it is patterned after the provisions of 29 U.S.C.A. § 101 et seq., the Norris-LaGuardia Act.
[3] LSA-R.S. 23:844 provides:

"No court shall issue a temporary or permanent injunction in any case involving or growing out of a labor dispute, as herein defined, except after hearing the testimony of witnesses in open court, with opportunity for cross-examination, in support of the allegations of a complaint made under oath, and testimony in opposition thereto, if offered, and except after findings of fact by the court to the effect:
"(1) That unlawful acts have been threatened or committed and will be executed or continued unless restrained;
"(2) That substantial and irreparable injury to complainant's property will follow unless the relief requested is granted;
"(3) That as to each item of relief granted greater injury will be inflicted upon complainant by the denial thereof than will be inflicted upon the defendants by the granting thereof;
"(4) That no item of relief granted is relief that a court has no authority to restrain or enjoin under R.S. 23:841;
"(5) That complainant has no adequate remedy by ordinary legal procedure; and
"(6) That the public officers charged with the duty to protect complainant's property have failed or are unable to furnish adequate protection.
"Such hearing shall be held after due and personal notice thereof has been given, in such manner as the court shall direct, to all known persons against whom relief is sought, and also to those public officers charged with the duty to protect complainant's property.
"If a complainant shall also allege that unless a temporary restraining order is used before such hearing can be had a substantial and irreparable injury to complainant's property will be unavoidable, such a temporary restraining order may be granted upon the expiration of such reasonable notice of application therefor as the court may direct by order to show cause, but in no case less than forty-eight hours.
"Such order to show cause shall be served upon such party or parties as are sought to be restrained and as shall be specified in said order, and the restraining order shall issue only upon testimony, or in the discretion of the court, upon affidavits, sufficient, if sustained, to justify the court in issuing a temporary injunction upon a hearing as herein provided for.
"Such a temporary restraining order shall be effective for no longer than five days, at the expiration of which time it shall become void and not subject to renewal or extension; provided, that if the hearing for a temporary injunction shall have been begun before the expiration of the said five days the restraining order may, in the court's discretion, be continued until a decision is reached upon the issuance of the temporary injunction.
"No temporary restraining order or temporary injunction shall be issued except on condition that complainant shall first file an undertaking with adequate security sufficient to recompense those enjoined for any loss, expense, or damage caused by the improvident or erroneous issuance of such order or injunction, including all reasonable costs, together with a reasonable attorney's fee, and expense against the order or against the granting of any injunctive relief sought in the same proceeding and subsequently denied by the court.
"The undertaking herein mentioned shall be understood to signify an agreement entered into by the complainant and the surety upon which a decree may be rendered in the same suit or proceeding against the said complainant and surety, the said complainant and surety submitting themselves to the jurisdiction of the court for that purpose. But nothing herein contained shall deprive any party having a claim or cause of action under or upon such undertaking from electing to pursue his ordinary remedy by suit at law."
[4] 74 So.2d 188. The holding of Douglas was criticized by commentators. See e. g., C. Reynard, "Work of the Louisiana Supreme Court, 1953-54 TermLabor Law," 15 La.L.Rev. 324 (1955); Note, 29 Tul.L.Rev. 791 (1955).
[5] 74 So.2d 187.
[6] See Reynard, supra, 15 La.L.Rev. at 326.
[7] See LSA-C.C.P. art. 3601 et seq. The legislature has regulated the issuance of injunctions by prescribing the grounds for issuance, art. 3601; the requirements of notice and delay, art. 3602; the quantum of proof required, art. 3609; and the procedure for appeal, art. 3612.
[8] See Justice Hawthorne's dissent in Douglas, 74 So.2d at 189.

LSA-R.S. 47:1575 prohibits the issuance of an injunction restraining the collection of taxes. LSA-R.S. 47:1993 forbids an injunction prohibiting the depositing of assessment roles in the office where the records of the parish are kept. LSA-R.S. 13:4432 allows for a suspensive appeal, without bond, in certain cases where an injunction has been issued. LSA-R.S. 17:2188 prohibits an injunction enjoining the payment of principle or interest on obligations of indebtedness issued by the Board of Supervisors of Louisiana State University. LSA-R.S. 26:106 forbids an injunction restraining the Alcoholic Beverage Control Board before it has made a decision on a permit application, suspension, or revocation. LSA-R.S. 26:304 forbids the courts to enjoin the action of the Collector of Revenue and the Board of Tax Appeals in certain instances. LSA-R.S. 39:834 prohibits an injunction enjoining the payment on obligations of indebtedness issued by political subdivisions of the state. LSA-R.S. 30:13 forbids the courts to enjoin enforcement of a statute relating to conservation of oil and gas, except under certain conditions. LSA-R.S. 30:218 prohibits the enjoining of exploration for minerals on state lands. LSA-R.S. 23:1635 forbids the issuance of an injunction enjoining the payment of unemployment compensation benefits awarded by the Board of Review.
[9] LSA-R.S. 23:844.

LSA-R.S. 23:821 provides, in pertinent part, as follows:
"(3) The term `labor dispute' includes any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, or concerning employment relations, or any other controversy arising out of the respective interests of employer and employee, regardless of whether or not the disputants stand in the proximate relation of employer and employee."
[10] LSA-R.S. 23:844 provides, in pertinent part, as follows:

"No court shall issue a temporary or permanent injunction in any case involving or growing out of a labor dispute, as herein defined, except after hearing the testimony of witnesses in open court, with opportunity for cross-examination, in support of the allegations of a complaint made under oath, and testimony in opposition thereto, if offered, and except after findings of fact by the court to the effect:
"(1) That unlawful acts have been threatened or committed and will be executed or continued unless retrained;
"(2) That substantial and irreparable injury to complainant's property will follow unless the relief requested is granted;
"(3) That as to each item of relief granted greater injury will be inflicted upon complainant by the denial thereof than will be inflicted upon the defendants by the granting thereof;
"(4) That no item of relief granted is relief that a court has no authority to restrain or enjoin under R.S. 23:841;
"(5) That complainant has no adequate remedy by ordinary legal procedure; and
"(6) That the public officers charged with the duty to protect complainant's property have failed or are unable to furnish adequate protection."
[11] The Union also asserts that Coca-Cola failed to prove the first five requirements of the statute. However, because the failure to allege and prove the sixth element alone necessitates a reversal, this contention will not be considered.
[1] Although the wording of the particular constitutional article (former art. 7, § 2) has changed slightly since the issue was addressed by our Court, there has been no essential change in the meaning of the article. Good Hope Refineries, Inc. v. Oil Chemical & Atomic Workers International, Local 4-447, 386 So.2d 378 (4th Cir. 1980).