11 THIBODEAUX, Judge.
This appeal involves the unionization of the City of Pineville police department and alleged violations of the “Little Norris-La-Guardia Act,” La.R.S. 23:821 et seq., and the “Right to Work Law,” La.R.S. 23:981 et seq. The Pineville Police Officers’ Association, Local 1990, seeks a permanent injunction prohibiting the City of Pineville, its mayor, Fred H. Baden, and its Chief of Police, Phillip E. hOestriecher, from engaging in unlawful future conduct directed at the organization and its members.
The trial court refused to issue an injunction prohibiting the mayor and other city officials from engaging in “coercive interrogation” and disruptive behavior toward union officers. The trial court determined that the mayor and other city officials did not violate the “Little Norris-LaGuardia Act” or the “Right to Work Law.”
Based on the following reasons, we reverse the judgment of the trial court and issue a permanent injunction against the City of *538 Pineville, Mayor Fred H. Baden, and Chief of Police Phillip Oestrieeher prohibiting them from engaging in coercive and intimidating behavior directed at the members of the Pineville Police Officers’ Association, Local 1990, and members of the Pineville police department.
I.

ISSUES

We shall consider:
1. whether the trial court erred in finding that the actions and conduct exhibited by the City of Pineville, its mayor, Fred H. Baden, and its Chief of Police, Phillip Oestrieeher, did not constitute a violation of the “Little Norris-LaGuar-dia Act,” La.R.S. 23:821 et seq., and the “Right to Work Law,” La.R.S. 23:981 et seq.; and
2. ■ whether the trial court erred in refusing to issue a permanent injunction prohibiting the City of Pineville and Mayor Baden from engaging in coercive and discriminatory conduct directed at the members of the Pineville Police Officers’ Association, Local 1990.
II

FACTS

The Pineville Police Officers’ Association, Local 1990 (hereinafter referred to as “Local 1990”) was established in 1990. From 1990 to 1991, Local 1990 was somewhat inactive. In early 1992, Local 1990 began urging the city administration for wage increases. Later that same year, Mayor Baden accosted individual officers and inquired about their unionization efforts. Officer Frankie Crooks, the initial president of Local 1990, was confronted by Mayor Baden and threatened with the prospect of a job transfer because of his union involvement.
In January 1993, Officers Crooks, Darrin Luneau, and Kenneth Secoy met with Mayor Baden to discuss the issue of wages. The mayor threatened to use litigation as a means of opposing the efforts of Local 1990. During that same month, Officer Felix Drewitt was discharged from the police department because he refused to disclose the identity of an officer who made a general comment about the effect of the unionization upon Mayor Baden.
On January 25, 1993, Officer Crooks attempted to obtain payroll records from the city administration at the request of Officer Billy Alvarado, a fellow union member. Thereafter, Officer Crooks was reprimanded by Police Chief Phillip Oestrieeher for his actions. Similarly, Officer Alvarado was reprimanded by the mayor for seeking assistance from Officer Crooks. In February 1993, Officer Alvarado visited the mayor’s office to announce his withdrawal from Local 1990.
On February 8 and 17, 1993, respectively, Officer Crooks sent a letter to the mayor requesting a formal meeting to discuss wage increases. There was no response from the city administration to either letter. On March 23, 1993, Officer Crooks delivered a third request to the mayor’s office. The next day, three union members, Officers Tony Martin, Carl Bordelon, and David Samples, were fired.
Officer David Samples was fired for alleged insubordination because he said “yeah” to Mayor Baden during a phone conversation. Officer Samples was ordered to hand-deliver a written apology to the mayor’s house. Upon delivering his apology, he was confronted by Mayor Baden about his affiliation with Local 1990. Attempting to refute the mayor’s allegations of deceit and disloyalty, Officer Samples was called a “f* * *ing liar” by Mayor Baden. Nearly one month after this conversation, Samples was discharged. Six months after his discharge, Officer Samples was re-hired as a non-union officer.
While challenging the administration’s layoffs, Officer Crooks was threatened by the mayor with a possible dismissal if Crooks continued his efforts to organize Local 1990. Subsequently, Officers Crooks and Luneau were transferred to special assignment with the Alexandria Metro Narcotics Team and the Rapides Parish DARE program, respectively.
*539 During the summer of 1993, the administration instituted a rule which prohibited private conversations among off-duty police officers on municipal property. In lieu of endorsing Local 1990, the city administration created the “Liaison Board” to address the concerns of the police officers.
In April 1993, Local 1990 placed an ad in the local paper, endorsing Mayor Baden’s political opposition and criticizing his administration’s management of the police department. Shortly thereafter, Officers Crooks and.Luneau were transferred back to their regular assignments.
On April 15, 1994, Mayor Baden summoned Officer Crooks to his house and reprimanded Crooks' for comments made to another officer concerning the mayor. During the course of this discussion, Mayor Baden again threatened to transfer Officer Crooks to a special assignment unless he cooperated with the mayor and his administration.
On July 28, 1994, Local 1990 filed suit seeking a permanent injunction to prohibit Mayor Baden and the City of Pineville from engaging in coercive and unlawful conduct aimed at disrupting the organization of Local 1990 and intimidating its members. After a hearing on this matter, the trial judge determined that the actions taken by the mayor and his agents were not sufficient to constitute violations under either the “Little Norris-LaGuardia Act” or the “Right to Work Law.” Therefore, the trial judge denied the plaintiffs’ request for injunctive relief. Local 1990 now appeals the judgment of the trial court.
III.

LAW & DISCUSSION

Standard of Review
Generally, an appellate court may not set aside the factual findings of a trial court, in the absence of manifest error or unless it is clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). Although deference should be accorded to the trial court’s findings, an appellate court has the constitutional duty to review both facts and law. Ambrose v. N.O.P.D. Ambulance Service, 93-3099 (La.7/5/94); 639 So.2d 216; See La. Const. art. V, § 10(b).
Moreover, an appellate court has the right to determine whether the trial court verdict was clearly wrong based on the evidence, or clearly without evidentiary support. Id. Therefore, if the record shows that there is no reasonable basis for the trial court’s findings, an appellate court has adequate grounds for a reversal of the determinations of the trial court. Butler v. Zapata Haynie Corp., 92-71 (La.App. 3 Cir. 2/23/94); 633 So.2d 1274.
1 (¡Conduct of the City of Pineville, its Mayor, and Other City Officials
The plaintiffs contend that the trial court erred in finding that the conduct of the may- or was not sufficient to constitute a violation of the “Little Norris-LaGuardia Act” or the “Right to Work Law.” Therefore, the plaintiffs argue that the trial court also erred by refusing to grant a permanent injunction prohibiting the mayor and his agents from engaging in coercive and unlawful conduct directed at Local 1990 and its members. We agree with the plaintiffs’ argument.
The established public policy in Louisiana regarding the “Right to Work Law” and the “Little Norris-LaGuardia Act” is that all persons shall be permitted to form, join, and assist labor organizations without fear of penalty or reprisal and free from the interference, restraint, or coercion of their employers, and/or their agents. La.R.S. 23:981[1]; La.R.S. 23:822[2]. *540 Specifically, the “Right to Work Law” and the “Little Norris-LaGuardia Act” prohibit an employer from engaging in coercive and unlawful conduct designed to inhibit the unionization of its employees. The Louisiana ^Supreme Court has held that the provisions of the “Little Norris-LaGuardia Act” are applicable to the state and its political subdivisions. Davis v. Henry, 555 So.2d 457 (La.1990). Thus, the “Little Norris-LaGuardia Act” protects the self-organization rights of both public and private employees. Id.
Jurisprudentially, there are no state cases which interpret the type of conduct necessary to constitute coercive or unlawful activity under the “Right to Work Law” or the “Little Norris-LaGuardia Act.” However, there is persuasive federal jurisprudence which sets forth various factors to be considered in determining whether employer coercion exists.
In National Labor Relations Board v. McCullough Environmental Services, Inc., 5 F.3d 923 (5th Cir.1993), the Fifth Circuit considered the following factors to determine whether employer interrogation could be properly characterized as coercive:
1) the history of the employer’s attitude toward its employees; 2) the nature of the information sought; 3) the rank of the questioner in the employer’s hierarchy; 4) the place and manner of the conversation; 5) the truthfulness of the employer’s reply; 6) whether the employer had a valid purpose for obtaining the information sought about the union; 7) whether a valid purpose, if existent, was communicated to the employee; and 8) whether the employer assured the employee that no reprisals should be forthcoming should he or she support the union.
Id. at 928, citing NLRB v. Brookwood Furniture, Div. of U.S. Indus., 701 F.2d 452, 460-461 (5th Cir.1983). Additionally, the Fifth Circuit asserted that “coercive interrogation may still be found to have occurred even if all the above enumerated factors operate in the employer’s favor.” Id., 5 F.3d at 928, citing Brookwood, 701 F.2d at 461.
In McCullough, the defendant-employer threatened its employees on several occasions with economic reprisals for organizing and supporting the union. Such reprisals included reduced work hours and more onerous working conditions. The Fifth Circuit determined that the defendant-employer unlawfully engaged in coercive interrogation and intimidation tactics aimed at restraining its employees’ participation and/or affiliation with the union. The Fifth Circuit held that the questioning of employees about union activity was unlawful because the interrogation tended to coerce employees to refrain from assisting or joining the union. Id. The Fifth Circuit stated that “[i]f [the] interrogation is coercive in nature, it makes no difference that employees are not actually coerced.” Id. at 928.
Still, a finding of coercive or unlawful conduct alone is insufficient to warrant an injunction in a labor dispute. Davis v. Henry, 555 So.2d 457 (La.1990); Baton Rouge Coca-Cola Bottling Co., Ltd. v. General Truck Drivers, Warehousemen and Helpers, Local Union No. 5, 403 So.2d 632 (La.1981). Louisiana Revised Statute 23:844 governs the grounds for an injunction in a labor dispute. It states that:
No court shall issue a temporary or permanent injunction in any case involving or growing out of a labor dispute, as herein defined, except after hearing the testimony of witnesses in open court, with opportunity for cross-examination, in support of the allegations of a complaint made under oath, and testimony in opposition thereto, if offered, and except after findings of fact by the court to the effect:
*541 (1) That unlawful acts have been threatened or committed' and will be executed or continued unless restrained;
(2) That substantiál and irreparable injury to complainant’s property will follow unless the relief requested is granted;
(3) That as to each item of relief granted greater injury will be inflicted upon complainant by the denial thereof than will be inflicted upon the defendants by the granting thereof;
(4) That no item of relief granted is relief that a court has no authority to restrain or enjoin under R.S. 23:841;
(5) That complainant has no adequate remedy by ordinary legal procedure; and
(6) That the public officers charged with the duty to protect complainant’s property have failed or are unable to furnish adequate protection.
9A “court’s authority to grant either temporary or permanent injunctive relief in a labor dispute is limited to situations in which it has made factual findings in [the] six specific areas” set forth in La.R.S. 23:844. Davis v. Henry, 555 So.2d at 461. Louisiana Revised Statute 23:844 mandates that all six requisites must be proved prior to the issuance of an injunction in a labor dispute. Amax Nickel Refining Co. Inc. v. United Steelworkers of America, Local No. 8373, 536 So.2d 655 (La.App. 4 Cir.1988); Baton Rouge Coca-Cola Bottling, 403 So.2d 632. This statute must be strictly construed. Id.
Analyzing this suit in light of McCullough and La.R.S. 23:844, we find that Mayor Baden engaged in coercive and unlawful tactics directed toward union members. The record is fraught with incidents in which the mayor threatened union members with either job transfers, reprimands, or dismissals. Mayor Baden testified that Local 1990 met resistance from the mayor’s office and the city administration. At trial, the mayor also admitted using harsh, “salty” language with police officers whenever union issues and labor disputes were discussed.
Mayor Baden testified that he was very involved in the day-to-day operations of the police department. Utilizing this “hands-on” approach, the mayor personally engaged and reprimanded police officers on a daily basis. In his capacity as mayor, Baden questioned several officers about their union involvement. The sole purpose of the mayor’s questioning was to isolate union members and coerce them to withdraw their membership from Local 1990. Upon discovering an officer’s union affiliation, Mayor Baden engaged in intimidation tactics designed to deter that officer’s involvement with Local 1990.
Further, the mayor reprimanded officers both in his office and at his home regarding their union involvement. Any reprimand or threat administered by the mayor would be accompanied by the apparent mayoral authority and ability to execute lipthat action. Consequently, the officers perceived the mayor’s conduct as a viable threat to their employment.
The record shows that, on several occasions, Mayor Baden either reprimanded or threatened officers simply because of their affiliation with Local 1990. Officer Frankie Crooks testified that the mayor repeatedly informed him that he should start looking for other employment if he continued his unionization efforts. Crooks also testified that the mayor often threatened to transfer him from his routine patrol duty to certain special assignments.
Officer David Samples, a former union member, testified that he was ordered to personally deliver a written apology to the mayor’s house. The apology was in response to Samples saying “yeah” or “yes,” instead of “yes sir,” to the mayor during a routine phone conversation. Samples further testified that, upon delivering the apology, the mayor informed him that he could possibly be one of the first officers dismissed due to prospective budget cuts in the police department.
Officer Samples also stated that the mayor expressed his disappointment about Samples’ union affiliation. During this conversation, Samples testified the mayor said he was “full of s* *t” and called him a “f* * ring liar” and a “baekstabber.” Within one month of his conversation with Mayor Baden, Officer Samples was discharged, then, subsequently, *542 re-hired six months later as a non-union officer.
We conclude that the trial court manifestly erred in finding that the conduct of the may- or did not constitute a violation of La.R.S. 23:822 and La.R.S. 23:981. The findings of the trial court are not reasonably supported by the record. After reviewing the record, we find that the mayor blatantly engaged in coercive and unlawful conduct directed at certain police officers in an attempt to dissuade their affiliation and participation with Local 1990.
In McCullough, the defendant-employer imposed a “no-solicitation and no-talking” rule one day before the union’s election of its representatives. The rule prohibited union solicitation among employees while on the defendant’s premises. Any employee who violated this rule faced reprimand from the defendant.
In determining the validity of the “no-solicitation” rule, the Fifth Circuit reasoned that “[t]he ultimate question is whether the employer’s actions, whether or not cast into a rule, interfered with the organizational rights of employees....” McCullough, 5 F.3d at 931, citing NLRB v. Roney Plaza Apts., 597 F.2d 1046, 1048-49 (5th Cir.1979). The Fifth Circuit stated:
“Initial promulgation of a no-solicitation policy upon the commencement of a union organization campaign is strong evidence of discriminatory intent.” Roney Plaza, 597 F.2d at 1049. “The employer may, of course, demonstrate that imposition of the restrictions was justified because the union campaign brought about substantial work disruption....” Id.
McCullough, 5 F.3d at 931.
Thus, the Fifth Circuit deemed the “no-solicitation” rule to be unlawful because it interfered with the employees’ right to collectively organize a union. The record was void of any supportive evidence that the union’s solicitation efforts created any substantial work disruption.
Similarly, Mayor Baden directed Chief of Police Phillip Oestrieeher to implement a “no-solicitation” rule within the police department. The rule prohibited all private conversations among off-duty officers while situated on municipal property, including discussions between supervisors and subordinates. We find that this rule was imposed solely for the purpose of preventing solicitation concerning Local 1990.
Essentially, the rule interferes with the officers’ right of self-organization. The defendants have provided no evidence that union solicitation created a substantial work disruption in the police department. Absent sufficient justification for the rule, | i2we conclude that the “no-solicitation” rule was implemented with discriminatory intent and is, thereby, invalid.
Though the trial court has the discretion to either disregard or- place greater weight on the testimony of witnesses, the trial court cannot simply ignore uncontro-verted evidence. We find that the implementation of the “no-solieitation” rule, standing alone, is sufficient to constitute coercive and unlawful conduct under the “Little Norris-LaGuardiá Act” and the “Right to Work Law.” Thus, even if we were to abandon our “manifest error” analysis and plainly accept the trial court’s findings, the factual findings are sufficient, as matter of law, to constitute a violation of the “Little Norris-LaGuardia Act” and the “Right to Work Law.”
Moreover, we have determined that Local 1990 will suffer substantial and irreparable injury unless injunctive relief is granted. We reason that such unlawful conduct by the mayor will persist in the absence of court-ordered restraints. As a result, greater injury will be inflicted upon the members of Local 1990 by the denial of the injunction than will be inflicted upon the City of Pine-ville, Mayor Baden, and Chief of Police Oes-triecher by the granting of such relief.
Additionally, the public officers charged with the duty of protecting the rights of the union officers are also the principal perpetrators of the alleged violations. We find that Mayor Baden and other city officials have neglected their duty and failed to provide adequate protection for Local 1990 and its members regarding the members’ rights of self-organization and their efforts to *543 unionize the City of Pineville police department.
The plaintiffs seek to enjoin Mayor Baden and/or his agents from engaging in coereive and unlawful conduct directed at Local 1990 and its members. The relief sought by the plaintiffs can only be redressed by the granting of injunctive |13relief. Also, in light of La.R.S. 23:841[3], the proposed relief is the type of relief which this court has the authority to restrain or enjoin.
We determine that the factual findings regarding the six requisite factors in La.R.S. 23:844 have been satisfied. The plaintiffs have sufficiently carried the stringent burden of proof as mandated by the statute. Based on the foregoing reasons, we grant the plaintiffs’. request for injunctive relief apd impose a, permanent injunction | i4against Mayor Fred H. Baden, the City of Pineville, and Chief of Police Phillip E. Oestriecher.
Injunctive Relief
This court has made specific findings regarding the conduct of the defendants in violating provisions of the “Little, Norris-LaGuardia Act” and the “Right to Work Law.” Furthermore, adequate compliance with La.R.S. 23:844 exists such that a narrowly drawn injunction prohibiting specific acts is appropriate. .See La.R.S. 23:846. It is unnecessary to remand to the district court for the purpose of issuing a permanent injunction. Because all of the salient facts as we have properly determined are in the record, we shall do so.
The permanent injunction is as follows:
Mayor Fréd H. Baden, the City of Pineville, and Chief of Police Phillip E. Oestriecher and their agents, servants, employees, attorneys, or those in active concert and participation with them are hereby permanently restrained, enjoined and prohibited from:
A. Terminating from employment members of the Pineville Police Officers’ Association-, Local 1990 because of their membership in Local 1990 or because of their support or unionism;
B. Termination from employment members of the Pineville Police Department for support of unionism in general and support of Local 1990 in particular;
C. Threatening to terminate members of Local 1990 or members of the Pineville Police Department because of union, membership, support of union membership, or union organizing efforts;
D. Transferring, to special assignments any members of Local 1990 or any member of the Pineville Police Department because of union membership, *544 union support, or union organizing efforts;
E. Reprimanding or disciplining members of Local 1990 or members of the Pineville Police Department for comments made to each other | ^concerning the Mayor or any of his subordinates or agents;
F. Reprimanding, disciplining, or threatening members of Local 1990 or members of the Pineville Police Department for membership in Local 1990 or support of unionism;
G. Creating a Liaison Board or other similar entity for the purpose of hindering membership in or support of Local 1990;
H. Imposing a “no solicitation” rule which prohibits all private conversations among members of Local 1990 or members of the Pineville Police Department while off-duty and situated on municipally-owned property;
I. Using vile, indecent, vulgar and intimidating language against members of Local 1990 and members of the Pine-ville Police Department for the purpose of inhibiting membership in Local 1990 or support of unionism.
This injunction is reproduced and is attached as Appendix “A” to this opinion.
Attorney Fees
The plaintiffs have requested attorney fees. Louisiana Revised Statute 23:986 states that “[a]ny employee injured as a result of any violation or threatened violation of the provisions of this Part shall be entitled to ... recover any and all damages of any character resulting from such violation or threatened violation.... ” (Emphasis supplied). While this statute is quite expansive, it is not an exception to the general rule that attorney fees are not recoverable in the absence of statutory or contractual authorization. Hall v. State Farm Mut. Auto. Ins. Co., 94-867 (La.App. 3 Cir. 5/31/95); 658 So.2d 204. We decline, therefore, the request for attorney fees.
IV.

CONCLUSION

For the foregoing reasons, we reverse the judgment of the trial court, issue a permanent injunction against the City of Pineville, Mayor Fred H. Baden, and Chief of Police Phillip E. Oestrieeher in accordance with La. R.S. 23:844 and La.R.S. 23:846.
All costs at the trial and appellate levels are assessed against the defendants-appel-lees, City of Pineville, Mayor Fred H. Baden, and Chief of Police Phillip E. Oestrieeher.
REVERSED AND RENDERED.
PERMANENT INJUNCTION ISSUED.
SAUNDERS, J., agrees with all parts of this opinion except the denial of Attorney Fees. He dissents on this issue, believing that LA.R.S. 23:986 is sufficiently broad to justify an award of Attorney Fees.
DECUIR, J., dissents and assigns written reasons.
YELVERTON, J., dissents for the reasons assigned by DECUIR.
117APPENDIX “A”
No. 96-785
Court of Appeal, Third Circuit
State of Louisiana
Pineville Police Officers’ Association, Local 1990, et al., Plaintiffs-Appellants
Versus
City of Pineville, et al., Defendants-Appellees
PERMANENT INJUNCTION
Mayor Fred H. Baden, the City of Pine-ville, and Chief of Police Phillip E. Oes-triecher and their agents, servants, employees, attorneys, or those in active concert and participation with them are hereby permanently restrained, enjoined and prohibited from:
A. Terminating from employment members of the Pineville Police Officers’ Association, Local 1990 because of their *545 membership in Local 1990 or because of their support or unionism;
B. Termination from employment members of the Pineville Police Department for support of unionism in general and support of Local 1990 in particular;
C. Threatening to terminate members of Local 1990 or members of the Pineville Police Department because of union membership, support of union membership, or union organizing efforts;
|18P. ' Transferring to special assignments any members of Local 1990 or any member of the Pineville Police Department because of union membership, union support, or union organizing efforts;
E. Reprimanding or disciplining members of Local 1990 or members of the Pineville Police Department for comments made to each other concerning the Mayor or any of his subordinates or agents;
F. Reprimanding, disciplining, or threatening members of Local 1990 or members of the Pineville Police Department for membership in Local 1990 or support of unionism;
G. Creating a Liaison Board or other similar entity for the purpose of hindering membership in or support of Local 1990;
H. Imposing a “no solicitation” rule which prohibits all private conversations among members of Local 1990 or members of the Pineville Police Department while off-duty and situated on municipally-owned property;
I. Using vile, indecent, vulgar and intimidating language against members of Local 1990 and members of the Pineville Police Department for the purpose of inhibiting membership in Local 1990 or support of unionism.
Dated: April 22,1998

. La.R.S. 23:981 states:
It is hereby declared to be the public policy of Louisiana that all persons shall have, and shall be protected in the exercise of the right, freely and without fear of penalty or reprisal, to form, join and assist labor organizations or to refrain from any such activities.

. La.R.S. 23:822 states:
In the interpretation and application of this Chapter, the public policy of this state is declared as follows:
Negotiation of terms and conditions of labor should result from voluntary agreement between employer and employee. Governmental authority has permitted and encouraged em *540 ployers to organize in the corporate and other forms of capital control. In dealing with such employers the individual unorganized worker is helpless to exercise actual liberty of contract and to protect his freedom of labor, and thereby to obtain acceptable terms and conditions of employment. Therefore, it is necessary that the individual workman have full freedom of association, self-organization, and designation of representatives of his own choosing, to negotiate the terms and conditions of his employment, and that he shall be free from the interference, restraint, or coercion of employers of labor, or their agents, in the designation of such representatives or in self-organization or in other concerted activities for the purpose of collective bargaining or other mutual aid or protection.

. La. R.S. 23:841 states:
No court shall issue any restraining order or temporary or permanent injunction which in specific or general terms prohibits any person or persons from doing, whether singly or in concert, any of the following acts:
(1) Ceasing or refusing to perform any work or to remain in any relation of employment regardless of any promise, undertaking, contract or agreement to do such work or to remain in such employment;
(2) Becoming or remaining a member of any labor organization or of any employer organization, regardless of any such undertaking or promise as is described in R.S. 23:823;
(3) Paying or giving to, or withholding from, any person any strike or unemployment benefits or insurance or other moneys or things of value;
(4) Aiding any person by any lawful means, who is being proceeded against in, or is prosecuting any action or suit in any court, of the United Slates or of any state;
(5) Giving publicity to and obtaining or communicating information regarding the existence of, or the facts involved in, any dispute, whether by advertising, speaking, patrolling any public street or any place where persons may lawfully be, without intimidation or coercion, or by any other method not involving fraud, violence, breach of the peace, or threat thereof;
(6) Ceasing to pátronize "Or to employ any person or persons;
(7) Assembling peaceably to do or to organize to do any of the acts heretofore specified or to promote lawful interests;
(8) Advising or notifying any person or persons of an intention to .do any of the acts heretofore specified;
(9) Agreeing with other persons to do or hot to do any of the acts heretofore specified;
(10) Advising, urging, or inducing, without fraud, violence, or threat thereof, others to do the acts heretofore specified, regardless of any such undertaking or promise as is described in R.S. 23:823;
(11) Doing in concert of any or all the acts heretofore specified on the ground that the persons engaged therein constitute an unlawful combination or conspiracy.